By the Court. Duer, J.
It appears very clearly, from the *592 opinion of Mr, Justice Jorntsoisr, with, a certified copy of which we have been furnished, that our former judgment in this case was reversed by the Court of Appeals, upon the single ground, that upon the report of the referee, the case was not distinguishable from that of Woodruff v. The Merchants’ Bank, in which the judgment of the Supreme Court was affirmed in the Court of Errors, (25 Wend. 673; 6 Hill, 172.) The learned judge expressly says,, that, in accordance with that decision, the usage which was proved before the referee ought to have been excluded,
It is certain, however, that the usage which was offered to be proved in Woodruff v. The Merchants’ Bank, being confined to the banks of this city, was strictly local; nor do we, at all doubt that it was upon this ground that the evidence was rejected.
The character of the usage excluded the presumption that the contract of the parties was made in reference to its existence, and it is familiar law, that it is only when this presumption is raised, that the usage is binding. When a usage applicable to the contract is general, the knowledge of the parties» and their intention to adopt the usage, are inferred from the mere fact of its existence, but to bind them by a local usage, their knowledge of its existence and their intention to follow it, are not inferred, but must be established by direct or circumstantial proof, (Gabay v. Lloyd, 3 Bing. 793; Palmer v. Blackburne, 1 Bing. 61; Kingston v. Knibbs, 1 Camp. 505.) In Woodruff v. The Merchants’ Bank, no such proof was given, or offered.
It seems to us a necessary conclusion, that the Court of Appeals, in referring to the decision in Woodruff v. The Merchants’ Bank as a controlling authority, must have regarded the usage which was proved before the referee as merely local, and, in reality, confined to the bank on which the check in question was drawn. It is only on this supposition, that this decision as bearing upon the question of usage, could with any propriety be referred to at all. The referee had stated in his opinion, which was before the court, that the parties were bound by the usage of the Thompson Bank, upon which the check was drawn, and it is this opinion, as we are persuaded, that the Court of Appeals, in declaring that its own judgment was con *593 formed to that of the Supreme Court, and of the Court of Errors, in Woodruff v. The Merchants' Bank, meant to overrule. It is true that the usage proved before the referee was far more extensive than that upon which he rested in part his decision, but the opinion of Mr. Justice Johnson shows that the fact was overlooked.
The usage as now proved, upon the trial, which the Court of Appeals directed, is general, in the broadest sense of the term. It embraces all the banks of Connecticut, their dealers and customers, and its existence and prevalence are established by evidence, which has not been controverted, and seems incontrovertible. We cannot hesitate to say that the usage, as general, is conclusively proved.
The legal effect of the usage now proved has not been declared by the Court of Appeals, and we are therefore at liberty and are bound to declare it, in conformity to our own views of the existing law. And it is our deliberate and fixed opinion that the law is settled—settled by decisions far too numerous to be quoted—that the interpretation of a mercantile contract is in all cases governed and controlled by usage (4 Term R. 216), where the usage justifies the presumption that the contract was made in reference to its existence; and that this presumption always exists when the usage proved is general, definite, uniform, and notorious. In all such cases, it is the duty of judges to give that construction to the agreement of the parties, which the usage requires, however widely this construction may differ from that which, in the absence of such proof, the terms of the instrument, or the rules of law, would constrain them to adopt. Convinced that such is the law, we cannot do otherwise than hold, that in this case the evidence of usage was properly admitted; that it proves that the check in suit was not entitled to days of grace, and that, consequently, it was duly protested, and the defendant, Newell, by notice of the protest, duly charged as an endorser.
notwithstanding the confidence, as well as ingenuity, with which the able counsel for the defendant enforced his argument, we cannot believe that the Court of Appeals intended to give its sanction to the doctrine upon which he insisted, namely, that evidence of a usage can never be admitted to vary that inter *594 pretation of a written contract, which the court would otherwise adopt, or to supersede the application of a rule of law, by which its decision would otherwise be governed. Had such been the rule, it is manifest that days of grace would never have been allowed; and were the doctrine now to be admitted, it would follow that evidence of usage must hereafter be rejected in a vast majority of the cases in which it has been hitherto received. That the Court of Appeals has given its sanction to an innovation so extensive and perilous as this, is a supposition that we are bound to reject. The attention of that high tribunal may not have been fully directed to the cases to which I refer; but that in the exercise of an arbitrary discretion it meant to condemn and overrule them, it is impossible to believe. In all the cases that I shall quote (to which a large addition might readily be made), it will be found upon examination, that the effect of the evidence of usage has been to vary, and vary materially, that which would otherwise have been deemed the legal construction of the contract. In some of the cases, the usage effects the change by adding its own terms to those of the contract; in others, by giving a different meaning to the words of the contract; and in many, by superseding a rule of law, that the court would otherwise have been bound to follow, and apply (Scott v. Bourdillon, 2 Bos. & Pull. 215; Uhde v. Walters, 3 Camp, 16; Robertson v. Clarke, 1 Bing. 445; Astor v. Union Ins. Co., 7 Cow. 202; Mason v. Skurray, 1 , Mars. on Ins. 226.) (In this case Lord Mansfield said, “ Every man who contracts under a usage, does so, as if the usage were inserted in the contract in terms.”) (Brough v. Whitmore, 4th Term. 206; Da Costa v. Edmonds, 4 Camp. 142; Ross v. Thwaite, 1 Park on Ins. (Hildyard Ed.) 23; Gould v. Oliver, 2 Scott, 252; Same v. Same, 4 Bing. N. Ca. 134; Coit v. Com. Ins. Co., 7 John. 383; Allegre v. Mary. Ins. Co., Harr. & John. 408; Turney v. Etherington, 1 Burr. 348; Pelly v. Roy. Ex. As. Co., id. 341; Noble v. Kennoway, Doug. 510; Salvador v. Hopkins, 3 Burr, 1707; Gregory v. Christie, 1 Park, by Hildyard, 104; Farquharson v: Hunter, id. 105; Moxon v. Atkyis, 3 Camp. 200; Gracie v. Mar. Ins. Co., 8 Crunch. 75; Coggeshall v. Amer. Ins. Co., 3 Wend. 283; *Long v. Allen, 2 Park. 797, 4 Doug. 276; * Newman v. Cazalet, Park.; * Vallance v. *595 Dewar, 1 Camp. 503; *Kingston v. Knibbs, 1 Camp. 500; *Bond v. Gonzales, Salk. R. 445; * Gordon v. Morley, 2 Strange 1264; * Elderly v. Fletcher, 2 Park. 646; *Ougier v. Jennings, 1 Camp. 505; * Palmer v. Blackburne, 1 Bing. 61; Planch v. Fletcher, Doug. 251; Eyre v. The Mar. Ins. Co., 5 Sergt. and Watts, 116.) (The usage proved in this case was directly opposed to the construction which the same court had previously adopted, 6 Whar. 249, and Sergeant, J., said, “We are not able to distinguish this case from the numerous cases decided in which proof of a usage had been admitted to vary and control the language used in a policy, and to give a construction different from that which it would otherwise have received.) (*Stewart v. Aberdeen, 4 Mees. and Wells, 211; *Halsey v. Brown, 3 Day, 346; *Rennie v. Bk. of Columbia, 9 Wheat. 482; * Lenox Bank v. Page, 9 Mass. 158; *Jones v. Fales, 4 Mass. 252; * Holderness v. Collinson, 7 B. and Cres. 212; *Seaman v. Gordon, 8 Carr, and P. 392; Gillan v. Simpkin, 4 Camp. 241; *Scordet v. Brodie, 3 Camp. 253; Mills v. Bank U. States, 4 Wheat. 430; *Bank of Washington v. Triplett, 1st Peters, 3; and * Chicopee Bank v. Eager, 9 Metcalf, 583; * Buffalo Commercial Bank v. Kortright, 22 Wend. 348; *Allen v. Merchants' Bank of N. York, 15 Wend. 486; S. C. in Error, 22 Wend. 218.) (In this remarkable case the judges of the Superior Court, of the Supreme Court, and the Court of Errors, were all of opinion that the construction which the law would otherwise give to a contract between a bank and one of its dealers may be set aside by proof of an opposite usage.)
No rule of law, we readily admit, is better established, or rests upon more solid foundations, than that which forbids the introduction of parole evidence, to alter or vary the terms, or legal import, of,an agreement in writing.
Nor is there any rule, where its scope and meaning are properly apprehended, judges should be more anxious to maintain and enforce. It is a mistake, however, to suppose (as the observations of Mr. Justice Thompson in Rennie v. Bank of Columbia, have clearly shown, 9 Wheat. 587) that this salutary rule is violated by the admission of the evidence of usage to control the interpretation of a mercantile contract. The evi *596 dence is introduced, not to vary, but to ascertain, the legal import of the agreement, by ascertaining the sense in which the parties meant it should be understood and carried into effect. The usage when so proved, as to justify the presumption that the contract was made in reference to its existence, becomes a part of the contract, with the same effect, as if it were inserted in terms. Had the words, “ without grace,” followed the order of payment in the check in suit, the legality of the protest, and, consequently, the liability of the defendant, would never have been doubted. The judgment of law upon the evidence before us, is that these important words are a part of the check, and are just as binding upon the maker, the endorser, and the bank, as if expressed upon its face. The usage inserts the words, and the law makes it our duty to give .effect to the insertion.
It is this consideration, that a general and established usage is an integral part of every contract, which its terms embrace, that explains and justifies the decisions in which the evidence has prevailed to set aside a rule of law, by which the interpretation of the contract, and the rights of the parties, would other-' wise have been governed. As “mochos et eoTimenbio vineunt legem” the right of the parties by a positive stipulation to prevent the application of a rule of law, by which their rights and liabilities under them contract would otherwise be determined, is undoubted, and as a general usage is held to afford the same, evidence of the intentions of the parties, as express words, it must necessarily have the same effect. A rule of law at variance with the usage is not applied, for the conclusive reason that the parties have agreed that it shall not be. And proof of the usage proves their agreement.
The consent of the parties is the origin of every usage. When the frequency of this consent has created a general and uniform usage, its expression is no longer deemed to be necessary, and then the law, from its just regard to the real intentions of the parties, knowing that the consent was meant to be given, supplies its expression.
It is not to be denied, that in a few cases judges have held the language, that a usage, however general, uniform, and notorious, inconsistent with an established rule of commercial law, is wholly void, and consequently that evidence of its existence, *597 in such a case, ought never to be received. It would, perhaps, not be difficult to show that this language has originated in a misconception of the grounds, and true import of the decision of the King's Bench in Edie v. The East India Co., 2 Burr, 1216 (vide 1 Duer on Ins., p. 361-2, note 22). But it is deemed sufficient to say that the doctrine, which it asserts, is expressly contradicted and overruled by a series of decisions reaching back more than a century, continued to the present day, and occurring nearly in every branch of commercial law. In most of the cases which I have cited, marked with an asterisk, a rule of law, that must otherwise have controlled the decision, was set aside by a proof of an opposite usage, and in all, the admissibility of such evidence to prevent the application of a rule that would otherwise be followed, is plainly declared.
If prior adjudications are evidence of the law which we are bound to declare, those which I have stated press upon our judgment and conscience with an accumulated force, which we are unable to resist. Upon the authorities, therefore, as well as upon principle, we must hold that every rule of law, which the parties to a contract may set aside by an express stipulation, is liable to be superseded by an hostile usage, and that it is only when an express stipulation, as an illegal contract, would be void, that proof of a corresponding usage can be justly excluded.
The propositions I have stated are general; but it seems to us there are special reasons, amounting to a special necessity, for holding that the interpretation, which judges are bound to give to an order upon a bank, depends wholly upon the evidence of usage. As a general rule, when moneys are deposited in a bank there is no express agreement between the depositor and the bank, and in the absence of such an agreement, we think it cannot be doubted, that the contract which the law implies is, that the orders for payment, the checks of the depositor upon his funds, shall be honored and paid according to the established and known custom of the bank, in its relations with other dealers. Hence proof of the usage must be admitted, in order to show the terms of the contract, a contract which, from its nature, embraces every future payment, that,
- upon checks in the usual form, the bank may be required to *598 make. Where, therefore, the usage proves that an allowance of grace has never been claimed by the bank upon checks in the ordinary form, even when payable upon a future day, but that invariably such checks have been paid or protested on the specified day, it will be the duty of the court to say, that the parties agreed that no grace should be allowed upon the particular check in controversy, and that this agreement is binding upon all to whom knowledge of the usage may be justly imputed.
It follows from these observations, that this case is very plainly distinguishable from that of Woodruff v. The Merchants Bank. The order, in that case, was not a check, in the ordi- • nary form, which the implied contract between the drawer and . the bank might reasonably have been construed to embrace. It was not a check payable at the counter of the bank upon which it was drawn, but, by its terms, required the payment to be made at a bank in this city. To create an obligation to make the payment so required, an acceptance by the bank, on which the check was drawn, was indispensable; and, as this necessity was apparent upon the face of the draft, it was, upon its face, not a check, but a bill of exchange, and, as such, subject to the rules by which bills of exchange, as distinguished from checks, are known to be governed. It is evident, from the opinion furnished to us, that the attention of the Court of Appeals could not have been directed to this important distinction. That a check in the usual form, even when payable on a future day, must be presented for acceptance, is a novel doctrine, which, we believe, has been hitherto unknown to all the banks in this state, and to all accustomed to deal with them. Post-dated checks, negotiated before they are due, it is settled, not only by usage but by express decisions, are not entitled to grace (Mohawk Bank v. Broderick, 10 Wend. 304; S. C. in Error, 13 Wend. 131; Salters v. Burt, 20 Wend. 205), and between these and checks payable on a day subsequent to that on which they are dated, bankers and merchants have, hitherto, been unable to see that there is any ground for a distinction. In each case the check, when issued, is payable on a future day. There is a difference in the form, none in the intent. In each case* the expectation is, that the check will not be presented for *599 acceptance, but will be presented for payment, and will be paid on the day when, by its terms, payment is demandable.
It is, however, alleged, and we are not disposed to deny, that the Court of Appeals has decided that a check, payable on a day subsequent to its date, is an inland bill of exchange, which, as such, is entitled to the usual days of grace, and can only be protested, so as to charge an endorser, on the day when the grace expires. Such, undoubtedly, is the decision that we are bound to follow, but we cannot think that we are bound to understand it in the absolute, unqualified sense, which, as corresponding with the intentions of the court, the counsel for the defendant urged us to adopt. The Court of Appeals has not said, and, we hope, never meant to say, that, in reference to checks, or any other species of negotiable paper, the necessity for the allowance of grace may not be superseded by evidence of an opposite usage, when the usage is shown to be general, uniform, and notorious. Such is the usage now established, and we apprehend that it- is not merely our right, but our duty, to hold that it is valid and controlling.
The identical question, it now appears, arose and was decided by this court, as we now decide it, in 1837, in the case of Osborne v. Smith (vide 14 Conn. 366, note), and it is with no ordinary satisfaction that we refer to the reasoning of Chief Justice Jones, in the elaborate opinion by which he there sustained the judgment of the court, as corresponding in all respects with the views that, previous to our, knowledge of his opinion, we had been led to entertain.
So far, the case has been considered by ns, as governed by the law of this state ; and, even upon this hypothesis, we have found it necessary to hold that this plaintiff is entitled to recover—but, in reality, it is not upon the law of this state that the right of the plaintiff to the judgment which he seeks, and we are prepared to render, at all depends. The check in suit was drawn upon a bank in Connecticut, and was there payable, and, consequently, it is by the law of that state that the question, whether it was duly protested, and the defendant duly charged as an endorser, must alone be determined. Hence the counsel for the plaintiff, with commendable prudence, in order to rescue the case from the possible hazard of a wider *600 interpretation being given to the reversal of our former judgment by the Court of Appeals, than we have found it necessary to adopt, has given evidence of the law of Connecticut, in its bearing upón the question we are requested to decide, as a foreign law ; and the admissibility and sufficiency of the proof so given, are the questions that remain to be considered.
It was admitted on the trial that there were no questions of fact necessary to be submitted to the jury. The question, therefore, for our determination is, whether the uncontradicted evidence on the part of the plaintiff was sufficient in law to entitle him to a verdict; and if this must be decided in the affirmative, the fact that the law of Connecticut is such as was alleged, must be considered as found by the jury. Similar remarks apply to the evidence in relation to the usage. If admissible at all, it was conclusive, and the usage is established.
Witnesses more competent and trustworthy than those who were examined to prove the law of Connecticut, could not possibly have been selected. Their thorough knowledge of the subject in relation to which they are called to testify; the high judicial station which several of them occupy; the professional eminence and long experience of all, clothe their words with a peculiar and commanding authority. There is no uncertainty or variance in their testimony, and they are fully sustained in every position, which they state, by the decisions to which they refer. These witnesses have proved that, by the law of Connecticut, the question whether any particular description of negotiable paper is or is not entitled to days of grace, depends wholly upon usage, and that if a general usage exists, denying an allowance of grace to checks payable on a future day, that usage constitutes the law, which' their courts are bound to follow. As the existence of this usage is established by the other witnesses who were examined, the proof seems to be complete, that by the law of Connecticut payment of the check in suit was properly demanded on the day on which it was protested, and, consequently, that the protest was regular, and the defendant duly charged as an endorser.
What, then, are the grounds of the call that has been made upon us to reject the entire body of the evidence given on the *601 trial ? Why is it that we are required to say, that, imposing as it seems, it is wholly insufficient in law to maintain the action, and warrant a recovery %
It is possible that we have not fully comprehended the subtle reasoning of the ingenious counsel for the defendant; but I shall proceed to state, as plainly as I can, the several objections upon which we all understood him to rely.
It has not been shown, it was said, that the validity of the particular usage in relation to checks on time, has been settled in Connecticut by any express adjudication ; and, in defect of this proof, it was contended that we have no right to say that the usage, although proved to exist, is established as law.
Such is not our view of our rights and our duty. In our judgment, the evidence which the objection requires, was not at all necessary to be given; nor does its absence justify a reasonable doubt as to the sufficiency of the proof that has been given. That the courts in Connecticut, upon such proof of the usage as is now before us, would be bound to declare that the usage is the law of the state, is conclusively proved; and hence, the fact that no such decision, has hitherto been made, is regarded by us, as wholly immaterial. It is probable, that the exact question has not been brought before the courts, precisely for the reason that the particular usage in relation to checks is so general, uniform, and notorious, that no one has hitherto ventured to dispute its validity; nor is it probable, for the same reason, that the question will ever be litigated. Had this suit been brought in Connecticut, the evidence before us justifies the belief that no respectable counsel would have been found to advise its defence.
But, in truth, although the exact question has not been formally, it has been virtually decided by the Supreme Court of Connecticut. It was so decided by the emphatic approval which was given by that court (Kilgore v. Bulkley, 14 Conn. R., p. 362) to the opinion of Ch. J. Jones, in Osborne v. Smith. It was decided by making the judgment of this court upon the identical question, in a measure the basis of its own. The Supreme Court of Connecticut has judicially declared, that if the usage in that state is similar to that which was proved, in Osborne v. Smith, to be the usage of the banks in this city, the rule, which *602 the usage prescribes, the law of the state ratifies and adopts. The usagé, therefore, now established, establishes the law.
It has, however, been contended, and this is the last objection we shall notice, that the usage in question has not been established by any evidence that could be legally admitted; and that without this proof the evidence in relation to the law of Connecticut is deprived of its necessary support, and, as merely hypothetical, ought to be rejected. The admission of evidence, it is argued, is, in all cases, regulated entirely by the law of the tribunal in which it is offered; and, as the Court of Appeals has decided that the usage, as proved before the referee, ought to have been excluded, it is our plain duty, bound by that decision, tó exclude the evidence in relation to that usage that has now been given.
To this reasoning there is a brief, and, we think, a satisfactory reply.
We have already shown that the Court of Appeals has not decided that proof of a general usage ought to be excluded, but admitting that such is the import of its decision, it must be borne in mind, that, in the case before that court, there was no question as to the law of Connecticut, which was then assumed to be the same as our own, and that the sole ground of its decision, was, that a usage, contradicting a settled rule of law, is wholly void, and its existence, therefore, not a subject of proof. It is manifest, however, that this reason has no application, where the controversy turns wholly upon a foreign law, which holds that a general and established usage, however inconsistent with the rules of the common law, has a paramount and controlling authority, and, when proved, constitutes itself the law that judges are bound to follow. In such a case, to prove the usage is to prove' the law, and to exclude the evidence is in effect to determine that in our courts a foreign law, depending upon usage, cannot be proved at all." It would be a mockery to say that the law of Connecticut governs this case, and yet exclude the appropriate and necessary proof of its existence, and in this legal solecism we must refuse to be involved.
Finally, it cannot be doubted that, we are bound to decide this cause as it has been clearly proved it would now be decided in. Connecticut. Three of the present judges of its highest *603 court have been examined as witnesses, and the necessary result of their testimony is, that were this case now before the tribunal to which they belong, its judgment would be certainly and promptly rendered in favor of the plaintiff.
Such, therefore, must be our judgment.
Our opinion upon the other questions that were discussed upon the argument, is in favor of the defendant. We think that the claim for damages cannot be sustained, and that the rate of interest is governed by the law of Connecticut.
The verdict was, therefore, rendered for the proper amount, and there must be judgment upon it, as it stands.
Bosworth, J.
When this cause was before me as referee, it was satisfactorily proved, that it was not only the uniform usage of the Thompson Bank, but of all the banks in the state of Connecticut, to pay checks of the form of the one in question, on the day designated on its face for payment; or, if there were no funds to meet it, to protest it on that day for non-payment. I intended to report that I so found the facts, and not merely to find and report that such was the usage of the Thompson Bank. I have not seen the report since it was made, and am not aware whether it is open to the construction that it reports the usage of one bank only. The proof made was of a usage co-extensive with the state of Connecticut. In admitting proof of it, and in passing upon it when satisfactorily established, I disposed of the case, on the assumption, that a general, uniform, and notorious usage, in respect to an instrument like this, one in daily use, and daily acted upon, and one by which daily transactions involving large pecuniary amounts were adjusted, might properly be proved; and when proved the judgment of law was, that the instrument was made, delivered, and accepted, with reference to such usage, and that the rights and liabilities of the parties were affected by it, precisely as they would have been by the use of words in the instrument itself, stipulating in terms corresponding with the legal effect of the usage. If the special report made by the referee is correctly stated in the report of the case when first before this court (5 Sand. S. C. R. 327), it found that the usage allowed and decided to have been proved^ was not merely a usage of the *604 Thompson Bank, but a usage of every bank in the state, and therefore a usage applicable to every instrument of like form drawn upon a Connecticut bank, if proof of the usage was admissible.
It did not seem possible to me, that, contrary to this uniform usage, any one could suppose that such a paper was, in the intention or contemplation of any party to it, to be presented for acceptance, and if not accepted, to be protested for non-acceptance.
A drawee of a bill is not liable to pay unless he accepts it. But is it clear, that when a bank depositor draws his check on the bank with which he keeps an account, and against funds actually on deposit, a bond fide holder of the check could not compel the bank to pay? In the absence of any express agreement between the bank and its customer, to pay the checks of the latter, drawn on funds deposited, on the presentment of the check, or' on the day on which payment was directed by the check to be made, or to pay them at all, would the court exclude proof of the uniform and notorious usage of every bank in the state, to pay to the holder on presentment of the check on the day named for payment, and deny a recovery, notwithstanding proof of such usage, and that the drawer of such check had funds in bank to meet it ?
It also seemed to me, that this case was clearly distinguishable from that of Woodruff v. The Merchants’ Bank, 25 Wend. 673. In the latter case, the bill was drawn in Michigan, on a bank in the same state, and was payable sixty days after its date -in the city of New York. It had been accepted. In the absence of any facts, except the drawing of the bill and delivery of it to the payee, the drawee would be under no obligation, without having accepted it, to pay the amount in New York, or at all. It was not shown to have been drawn by a depositor on a bank in which he kept his account, nor was it payable at the counter of the bank on which it was drawn. There was no proof of an unvarying usage of the bank on which it was drawn, and of every other bank in the State of Michigan, to pay bills in that form on-the precise day named, without grace.
And the only usage proved, was one prevailing in the city of New York. • This local usage, if proved, the court held to be- *605 in conflict with the settled and acknowledged law of the state. No usage throughout the state was proved or offered to he proved; nor was any usage of the state in which the parties to the bill resided proved, or attempted to be. No usage was proved of which the parties to the bill could be presumed to have notice, and with reference to which they could be presumed to have contracted.
In the case before us, a general usage of every bank in Connecticut, including that on which it was drawn; a usage of the state in which the drawee resided, and in which payment was to be made, was proved. The instrument in question was drawn by a bank depositor on his depositary, and was to be paid at the counter of the latter. I therefore thought the cases clearly distinguishable.
But the Court of Appeals I understand to have decided otherwise. If such is its decision, it follows, that they must be deemed to be, and treated as, not distinguishable; that proof of the usage was improperly admitted; that by the settled law of this state, the instrument in question is a bill of exchange, and entitled to grace, although always dealt with and acted upon as not being entitled to it; and that the same consequences will result from laches in presenting it for acceptance, and the same rights and liabilities result from a protest of it for non-acceptance, as in the case of an undoubted bill of exchange.
This result must follow in the absence of proof that the law of Connecticut, where the contract was to be executed, is different from that of this state. On the former trial it was not shown what the law of that state, on this subject, is.
It is now clearly proved, that a uniform and notorious usage of the state, in reference to such paper, is the law of the state on that subject.
It is clearly proved, that the usage to present and pay such paper, on the day specified, if the drawer has funds to meet it, or to protest it for non-payment, if he has no funds, is general throughout that state. That every bank in the state invariably acts upon it. Not an exceptional case is stated. The usage has existed long enough to give it the force of law, so far as the period of its duration affects the question of its validity. It is. proved by testimony entirely satisfactory, so far as the number *606 of witnesses, their means of knowledge, and their capacity to speak authoritatively, are concerned. I concur in the judgment now given, on the grounds, that the law of the state of Connecticut is the law of the contract, and that by the law of that state the instrument was not entitled to days of grace, but was payable on the day named on its face, and was therefore properly protested.
Judgment for plaintiff, with costs.
*607 CASES OF PEACTICE AND DECISIONS IN SPECIAL PROCEEDINGS AT THU GENERAL AND SPECIAL TERMS AND AT CHAMBERS. (a)

 The cases of. practice reported were decided with the sanction of two at least, and nearly all, with that of three or more, of the justices of the court.