The Georgia National Bank *vs.* Henderson.

THE GEORGIA NATIONAL BANK, plaintiff in error, *vs.* FELIX H. HENDERSON, defendant in error.

1. When a note, payable at bank, is placed in a bank for collection, it is the duty of the bank to see to it that it is properly presented for payment, and on its dishonor, to have it duly protested, and notice given to the indorsers.

2. When a bill of exchange payable at......, was sent to a bank for collection, and the bank treating it as a bank check, and not entitled to days of grace, presented it for payment, and had it protested, etc., on the day of its maturity, without days of grace, by means of which the indorser was discharged, and it was in evidence, that the bank was notified by the indorser at the time that he claimed the paper to have days grace :

*Held,* That the bank was liable to the person who deposited the paper for collection for damages, for its negligence in not presenting the check, as required by law, and causing notice of its non-payment to be given to the indorser.

3. The present holder of a negotiable promissory note or bill of exchange is *prima facie,* presumed to have acquired title thereto before its maturity, and in a suit by the holder against the bank to which the paper was sent for collection for failing to present it for payment, and failing to notify the indorser of its dishonor, the present holder is *prima facie* presumed to have been the holder at the maturity of the paper.

Protest. Bank. Days of grace. Bank check. Presumption. Before LOGAN E. BLECKLEY, Esq., an Attorney, presiding by consent. Fulton Superior Court. October Term, 1871.

Felix H. Henderson brought case against the Georgia National Bank, alleging the following facts: That on August 4th, 1866, Massey & Herty made the following instrument, in writing :

"ATLANTA, GEORGIA, August 4th, 1866.
"*Georgia National Bank, Atlanta, Georgia:*
" Ninety days after date, pay to F. R. Bell, or order, one thousand dollars.        (Signed)
" $1,000.            MASSEY & HERTY.
"Indorsed : JOHN D. POPE, F. R. BELL."

That Bell indorsed said bill of exchange to Pope, and Pope indorsed the same to plaintiff; that plaintiff delivered said bill of exchange to defendant for collection; that on the 2d of November, 1866, the ninetieth day from the date of said instrument, said defendant presented said bill of exchange for payment, and protested the same for non-payment, without allowing days of grace on the same, by which illegal action the indorsers were discharged from all liability; that the drawers are insolvent; that, by this course of action, defendant has become liable to plaintiff for the amount of principal and interest due on said bill of exchange.

The defendant pleaded the general issue. It appeared from the evidence that the plaintiff had originally sued the drawers and the indorser, John D. Pope; that he failed to recover against Pope, on the ground that he was discharged from liability on the instrument sued on, because no days of grace were allowed on the same; that Pope received no notice of protest, except the one of date November 2d, 1866; that he notified the officers of the bank that said bill was entitled to days of grace, and requested that they should not demand payment of the same, or protest it for non-payment until after the three days of grace had expired; that Pope was solvent, and the drawers insolvent; that it was the custom of banks to charge for collections, unless the owner of the instrument to be collected kept a deposit account with the collecting bank.

The defendant moved for a non-suit; the motion was overruled and defendant excepted.

The jury returned a verdict for the plaintiff for the sum of $1,350.

The defendant moved for a new trial, because the Court erred in each of the following charges to the jury, to-wit:

"Three points present themselves for your consideration: 1st. Did the defendant owe the plaintiff a duty? 2d. Was that duty neglected, or negligently performed? 3d. What damage, if any, resulted from such negligence?

"Did the plaintiff own the bill at its maturity? On that question you may consider all the facts proven, including also the present possession of the bill by the plaintiff. Such possession alone would be sufficient evidence of title in a suit on the instrument itself, but is not necessarily so in an action, such as the one now on trial. You may or may not find it satisfactory, in connection with all the other facts of the case.

"If the plaintiff was the owner of the bill, did the defendant become his agent to collect it, or to take the ordinary measures to prevent the discharge of the indorsers on its dishonor? An agency of this kind might have been created between these parties, notwithstanding the fact that the de-

fendant was the person on whom the bill was drawn, or to whom the bill was addressed. It was competent for the defendant to accept such an agency, in respect to this bill, if it thought proper to do so, and if he did accept it, its duties and obligations would be the same as if it had had no previous connection with the paper. Whether the alleged agency existed, you are to determine from the evidence, and if the evidence discloses any act done by the defendant on the line of such an agency, you are at liberty to consult the act for what you may think it worth, as tending to prove the agency. If no such agency has been established to your satisfaction, your verdict will be for the defendant. If, on the other hand, you believe from the evidence that the defendant undertook this duty, was there any breach of his undertaking?

"On the dishonor of this bill, a protest was necessary, and the indorsers were entitled to notice, either verbal or written, of such protest. A protest for non-payment before the three days of grace would be a nullity, and a notice of that protest would not avail to bind the indorsers. If, in this case, there was no other protest, that could be no legal notice to the indorsers, and they are discharged.

"If you should find that the indorsers were discharged, and that this discharge resulted from the defendant's negligence or breach of duty, while agent for the plaintiff, and that the drawers of the bill are insolvent, your verdict will be for the plaintiff for damages equal to the principal and interest of the bill."

The motion for a new trial was overruled, and defendant excepted and assigns said rulings as error.

COLLIER, MYNATT & COLLIER, for plaintiff in error. 1st. The relation of principal and agent could not exist between the parties: Smith's Mer. Law, 140; Paley on Agency, 33; 1 Par. B. & N., 357–504. 2d. The act of the agent was ratified in bringing suit against Pope: Story on Agency, 243–259; 27 Ga. R., 172; 10 Ga. R., 362; 1 *Ibid.*, 418; 5 McLean's R., 569. 3d. The defendant was only bound to

notify the holder of non-payment; 2 Am. L. C., 666; 3 Ala. R., 207; Smith's Mer. Law, 145; 5 Mason's R., 566; 8 Met. R., 79. The fault was not in nonfeasance but misfeasance: Paley on Agency, 71; 1 H. Black. R., 161. 4th. If indorser had notice no demand was necessary: 1 Par. B. & M., 367. 5th. Charge as to liability of bank was error: 1 Par. on B. & N., 480; 10 Cush. R., 582.

W. EZZARD; HULSEY & TIGNER, for defendant. 1. Bank liable for defective notice given by which indorser is discharged: 6 Hill. R., 648; 22 Wend. R., 214; 19 Barb. R., 391.

McCAY, Judge.

1. The general principle that a bank or any other collection agent taking a negotiable paper for collection is under obligations to have it duly protested for non-payment, seems unquestionable. The agent has the possession of the paper; generally the owners are at a distance; the notary will present and protest *only such* papers as are presented to him, and if the duty is not on the agent to see to it, there is, ordinarily, nobody in a situation to do it. And such is the current of authority.

2d. This Court has decided, on this very paper, that it is a bill of exchange, and not a bank check; that it was entitled to grace, and as it is payable at and by a chartered bank, that protest and notice are necessary to bind the indorsers: *Henderson vs. Pope*, 39 *Georgia*, 361. I do not propose to go over the reasons for that decision; there is no doubt but that authorities may be found, and some of them of high character, in which such a paper as this has been held to be a bank check. One of the strongest of these cases is a decision by a no less able Judge than Judge Story. But the current of the decisions appears to be that if the element of *credit* enters into the paper it is not a bank check, and that the mere making of the paper payable at a future day, being of itself an element of credit, makes it a bill of exchange, and not a bank check. A check is an order to the bank to pay the money of the drawer to the payee—it is an *appro-*

*priation* of money—cash.  A bill of exchange is a matter of credit.  It is drawn, looking to the future.  The element of credit enters into it.  This paper was not only payable at a future day, but it was avowedly *not* drawn upon the drawer's funds, and this the bank well knew, since its own books informed it that he had no funds there.  Besides, this paper was *indorsed*, guaranteed by two indorsers other than the payee, and this appeared on the face of the paper.  There was, therefore, none of the elements of a check in this paper, except that it was drawn upon a banker.  Payable at a future time, not drawn upon any funds and guaranteed by two indorsers, it was a bill of exchange, issued and taken upon the *credit* of the drawer and indorsers.

Assuming, therefore, that this is a bill of exchange, and that by the failure of the bank to have it duly presented on the third day of grace, and due notice to be given to the indorsers, they were discharged as we have decided in the case of *Henderson vs. Pope*, it follows that the holder has lost his right to go on the indorsers by the fault or negligence of the bank.  *Prima facie*, the bank is liable for negligence just as other agents are.  But it is said that agents of all kinds, except carriers and innkeepers, are only liable to ordinary diligence, and this is true.  A lawyer, doctor, or mechanic, indeed, any agent is not bound at all events.  Ordinary skill will excuse a mishap, even of a doctor or lawyer, and it is said that this being a doubtful matter, the bank having acted in good faith, is not liable, because it mistook the law.  A case very much in point is cited, and cases laying down this general doctrine of the degree of diligence, required of agents undertaking to transact business, are numerous.  For myself, I should have great doubt as to the liability of the bank, except for one thing.  Whether this was a bank check or a bill of exchange may have been a doubtful matter—one upon which even lawyers, nay, Judges of great eminence, may differ.  But the bank was distinctly informed by Mr. Pope, the indorser, that it was entitled to days of grace.  In other words, that it was *considered* by

The Georgia National Bank *vs.* Henderson.

him as a bill; as to him this would have clearly been a waiver of presentment on the first day of the three. A presentment and notice on the third day would have bound him in any event. This notice of Pope to the bank should have put the bank officers upon their guard. It was easy to have presented it on both days, and given notice of the non-payment on both days. Admitting that it was doubtful whether it was entitled to days of grace or not, attention was called to the fact by Pope's notice. It was an easy thing, and one that would occur to any prudent man to present it on both days. The bank was not obliged to decide the doubt. It might well have managed so as to save the plaintiff's right against the indorser's, in either event. Pope notified the bank of his claim that it was a bill. Was it not ordinary prudence to so act as to bind Pope, even if it was a bill? If there was but one way open, and the right way doubtful, ordinary skill, in determining the right way, may be all that is required. But here there were two ways open. One of them was sure. It was easy to take both. Notice was given that the way proposed was wrong. In my judgment, ordinary prudence required both to be taken, and for that reason I think the bank liable.

3d. *Prima facie*, notes over due are not negotiated; they are dishonored—suspicious. *Prima facie*, every man who has the possession of a negotiable paper took it before due. Henderson has this paper now; the presumption is he had it before and at its maturity. And we think this is as well true in a suit of this kind as in a suit on the note. It was not necessary, therefore, for Henderson to prove that he was the holder of the paper at maturity.

Judgment affirmed.

WARNER, Chief Justice, concurring.

The plaintiff brought his action against the defendant to recover damages for carelessly and negligently performing its duty in relation to the collection of a certain bill of ex-

change, placed in its hands for that purpose, of which the following is a copy :

"ATLANTA, GEORGIA, August 4th, 1866.

"Georgia National Bank of Atlanta, Georgia, ninety days after date, pay to F. R. Bell or order $1,000.

(Signed)    "MASSEY & HERTY."

Indorsed, "F. R. BELL, JOHN D. POPE."

The plaintiff alleges that the defendant protested the bill and gave notice to Pope, the indorser, (the only responsible party to the bill,) the day it became due, without allowing the three days of grace, as he should have done, whereby Pope, the indorser, was discharged and he lost his debt. When the case of *Henderson vs. Pope* was before this Court at a former term, (see 39 *Georgia Reports*, 361,) this Court held and decided that the above described paper was a bill of exchange, and not being payable either at *sight* or on *demand*, was entitled to the three days of grace before being protested for non-payment, and that Pope, the indorser, was discharged. And the question now is, whether the defendant is liable, under the law, to the plaintiff for the loss which he has sustained in consequence of the negligent and unskillful manner in which it performed its duty in undertaking to collect the bill placed in its hands for that purpose. Contracts implied by reason and construction of law, arise upon the supposition that every one who undertakes any office, employment, trust or duty, contracts with those who employ or trust him to perform it with integrity, diligence and skill; and if, by his want of either of those qualities, any injury accrues to individuals, they, therefore, have their remedy in damages by a special action on the case: 3 Blackstone's Commentaries, 163. The defendant undertook to collect the plaintiff's bill for the customary compensation, and was bound to exercise the necessary skill and diligence for the accomplishment of that object, to know when the bill became due, and in case of non-payment to have it protested, and due notice given to the parties thereto in the manner required by law; and if the defendant failed to do so, it is liable to the plaintiff for

the damages sustained in consequence of such failure and unskillful conduct. The defendant was bound to know, when it undertook the collection of the paper for the plaintiff, that it was a bill of exchange, that it became due on the last day of grace, the same not being due at *sight* or on *demand*, that in case of non-payment on the last day of grace, it should then be protested and notice given to the indorser in order to hold him liable for the payment of the bill. If the defendant did not know these things, then it ought to have taken down its sign and quit the business of collecting commercial paper. The defendant, however, did seem to know that the bill should be protested for non-payment, and notice given to the indorser, and undertook to do it, but did it in such a negligent and unskillful manner that the indorser was discharged in consequence thereof, although the evidence in the record shows that the defendant was requested not to protest the bill for non-payment until the last day of grace.

But it is said that the defendant did not know that days of grace were allowed on this bill of exchange. Well, all I have to say in regard to that is, that such has been the law, at least, ever since Blackstone wrote his commentaries on the common law, and has been so recognized by the commercial world ever since that time, and long before. It is also said that the defendant did not know that the bill of exchange was entitled to the three days of grace because it was drawn upon and payable at a chartered bank. A chartered bank is an artificial person, and a bill of exchange may as well be drawn upon and made payable to an artificial person as to a natural person, the three days of grace are allowed as well on bills drawn upon and payable to artificial persons as to natural persons; there is no distinction as to the time when a bill of exchange becomes due between one drawn upon and payable at a bank and one payable to a natural person; both become due on the last day of grace, unless, under our Code, the bill is payable at a bank *on sight* or *on demand*. Why should there ever have been any difference as to the allowance of days of grace between a bill drawn upon and paya-

ble to a chartered bank and one drawn upon and payable to a natural person ? The truth is, the same principles of commercial law apply to both, so far as the allowance of days of grace are concerned, and did, when this bill of exchange was placed in the defendant's hands for collection, except checks drawn on a bank payable at *sight* or on *demand*.

To say that any *doubt* existed among lawyers or commercial bankers as to whether a bill, drawn upon and payable at a chartered bank ninety days after date, was not entitled to the three days of grace at the time the paper was placed in the defendant's hands for collection, would be to impeach their knowledge of commercial law for the purpose of making out a *plausible* defense for the defendant in this case, which the law does not uphold or sanction : Downer *vs.* The Madison County Bank, 6 Hill's N. Y. Rep., 648. Having concurred in the judgment of this Court, in *Henderson vs. Pope,* that the indorser was discharged for the want of a legal pro-protest and notice to him, I will not now *stultify* myself by holding that the defendant is not liable for its negligence and unskillful conduct in causing the plaintiff to lose his debt. In my judgment, there was no error in the charge of the Court to the jury, and the verdict was right, under the evidence in the case.

MONTGOMERY, Judge, dissenting.

In this case, I am constrained to dissent from my associates. The judgment, as it seems to me, assumes the very point in controversy. If the paper, drawn by Massey & Herty upon the plaintiff in error, is a bill of exchange, they are right and I am wrong. If a bill of exchange, it is entitled to grace; if a check, it is not. To say that no doubt exists among lawyers or commercial bankers upon this question is to ignore the discussions upon the subject which have taken place during the last forty years. The case of Downer *vs.* The Madison County Bank, 6 Hill, 648, relied on by the Chief Justice to sustain this, as it seems to me, somewhat

hasty assertion, does not touch the point. No question was raised there as to whether the note, which was left with the defendant for collection, was entitled to grace or not. Through negligence, proper notice was not given to an indorser, and the bank was held liable. Indeed, no contest seems to have arisen as to whether the bank was liable for the amount of the note or not, but whether it was liable to the plaintiff for his expenses incurred in a fruitless suit against the discharged indorser. The Court held the bank not liable for such expenses. Is there, then, any doubt upon this question among lawyers and commercial bankers? The opinion of the latter may be somewhat difficult to ascertain in this discussion; that of the former is readily accessible. Indeed, the *usage* of bankers—not their opinions—make the law. That usage becomes law when, in the opinion of lawyers, it is so uniform as to raise a presumption that the contracts of parties are made in reference to it.

It may be conceded that at one time the number of authorities was, with the majority of the Court, in holding a draft upon a bank payable at a future day, to be a bill of exchange, and not a check. It is equally true that some of the Courts, which have so held, are now endeavoring to struggle back to the rule laid down by Judge Story, in the matter of Brown, 2 Story's Reports, 502, which is a thoroughly considered opinion by that learned jurist, and while it is true he has no doubt upon the subject, yet he comes to directly the opposite conclusion from that arrived at by this Court in *Henderson vs. Pope*, 39 *Georgia*, 361. Chancellor Kent seems to coincide with Judge Story: 3 Kent's C., 105 *n.* In Rhode Island the following order was held to be a check, and without right to days of grace: "Westminister Bank, ninety days after date, pay to the order of J. W. $450:" 5 R. I., 31. In California and Louisiana it is held otherwise: Minturn *vs.* Fisher, 4 Cal., 35; 14 Louisiana Ann., 457, Successor of Kercheval. In Ohio the rule as adopted by this Court in 39 *Georgia* was laid down broadly at first in Morrison *vs.* Bailey, 5 Ohio State, 16. In Andrew *vs.* Blackly, 11 Ohio State, 89, the

pressure of the *usage* among bankers seemed to be too great for the Court, and it is there laid down that if a draft for money, otherwise in the usual form of a check, is payable on a future specified day, it is *prima facie*, but not necessarily a bill of exchange; and that when such instrument is drawn upon a bank or banker, and is designed by the parties as an absolute transfer and appropriation of an actually existing fund belonging to the drawer in the hands of the drawee, it is, nevertheless, a check, and not a bill of exchange, and not entitled to days of grace. It is submitted with deference, that this distinction is worse than the rule laid down in 5 Ohio State, 16. If the latter decision is the law without qualification, and without reference to usage among bankers, the *bona fide* holder of such a paper knows at least what to do to charge indorsers when the bank fails to honor the draft. But under the qualification contained in 11 Ohio State, he must act at his peril, and his action will be valid or not, accordingly as the evidence in a suit brought against an indorser may show the paper to be a bill of exchange or check. Possibly the report itself may suggest a solution of this difficulty. I have it not at hand, and am compelled to rely on the report I find of it in Hare & Wallace's Notes to 1 American Leading Cases, 5 Edition, 484. In Tennessee occurred the first case, within my knowledge, reported in this country, in which a bank check, payable at a future day, was held entitled to days of grace: Brown *vs.* Lusk, 4 Yer., 210. This case was decided prior to Judge Story's decision in the matter of Brown, and was before him when he made that decision, as we have seen he declined to follow it. How stands the question in Tennessee now? At the December Term, 1871, of the Supreme Court of Tennessee, the following paper is held to be a bank check, and not a bill of exchange:

"CLARKSVILLE, TENN., March 11th, 1865.

"Ten days after sight, pay to the order of E. Withers, $2,000, in currency, value received, and charge same to account.          (Signed)          "B. O. KESEE,

"Per GEO. B. FAXON, Cashier.

"*To Sturgeon, Clements & Co., Louisville, Ky.*"

McFarland, Judge, in delivering the opinion of the Court, said: "Without entering fully into a discussion of the authorities, for they are numerous, it will be sufficient to say that the mere fact that the paper is drawn payable at a future day, or so many days after sight, does not necessarily establish that it is not a check. There are other considerations affecting the question. If it is drawn upon a bank or bankers, and is designed by the parties as an absolute transfer and appropriation to the holder of so much of an actually existing fund belonging to the drawer, and in the hands of the drawee, it will in general be regarded as a check, and not a bill of exchange:" Herring *et al.*, *vs.* Kesee, M. S., op. December, 1871, reported in Southern Law Review, October, 1872, p. 613. This undoubtedly overrules Brown *vs.* Lusk but with the usual reluctance of Courts to say *in totidem verbis*, that they overrule a prior decision, Judge McFarland says, "in Brown *vs.* Lusk, the drawer had no funds in the bank upon which he drew, and this was probably the distinguishing feature in that case." The author of the article from which the foregoing is extracted, says: "The attempt of Judge Cowan in the well known case of Harker *vs.* Anderson, 21 Wendell, 272, to show that bank checks are bills of exchange, and nothing more, and hence in all things subject to the same rules of law, received but little favor from the profession, and it is now well settled that these instruments constitute a class *sui generis* subject to rules different in many important regards, from those applicable to other classes of negotiable paper." And yet this Court in *Henderson vs. Pope*, 39 *Georgia*, relies on this case as settling the question under discussion. I do not undertake to define what a bank check is; that, perhaps, were beyond my powers. But I do say that an instrument, conceded to be a bank check in every essential particular, except that it is payable on a day subsequent to its date, is, nevertheless, still a bank check, and not a bill of exchange; and, therefore. is not entitled to days of grace. The last decisions in Tennessee would seem to go the length of holding every draft upon a

bank or banker a check, and not a bill, unless the paper showed on its face that it was intended to be a bill of exchange: See Herring *et al.*, *vs.* Kesee, *supra*, and Planter's Bank *vs.* Kern, and same *vs.* Merritt, administrator, all decided December Term, 1871, quoted in the Review already referred to.

The most recent decision in Pennsylvania goes quite as far as those of Tennessee. In Champion *vs.* Brown, recently decided by the Supreme Court of Pennsylvania, and which I find reported in the American Law Register for January, 1873, page six, the precise point under discussion arose, and a check payable at a future day was held not entitled to grace, and properly protested on the day it appeared due by its face. I will remark here, in passing, in reply to the argument that section 2742 of our Code settles the law in Georgia to be, that all commercial paper, not payable on demand or at sight, is entitled to grace; that the same argument was urged in Champion *vs.* Brown, on the Pennsylvania Act of 1857, which reads as follows: "All drafts and bills of exchange drawn at sight shall be and become due and payable on presentation, without grace, and shall and may, if dishonored, be protested on and immediately after such presentation." The Court disregarded the argument. Compare the statute, as quoted, with the section of our Code referred to. They are substantially the same.

In New York, the decisions have been very much fluctuated on this point. At first, Judge Story's rule was adopted: 5 Sandford, 326; 2 Duer, 584. Afterwards, these cases were overruled: Bowen *vs.* Newell, 4 Selden, 190. And again, with qualifications, in the same case: 3 Kernan, 290. The instrument in question in this case was drawn in New York upon a bank in Connecticut. The decision was based broadly upon the wording of the paper, which called for payment on a day certain after the date, and the Court held it to be a bill of exchange, *but not entitled to grace*, because, they say, that it appeared, from the findings of the lower Court, that the law in Connecticut gave no grace on paper of this descrip-

The Georgia National Bank *vs.* Henderson.

tion; that, therefore, of course there could be none, and that these findings of the lower Court were "upon evidence derived from the best sources, and of the most unquestionable character." A late writer remarks upon this: "This admirable evidence was simply evidence of *usage.* The Court seeks to insist that this rule is not at variance with the rule laid down by them, on the same point, in 4 Selden, 190. It is well for a Court to cling to its consistency, and we can pardon desperate efforts of technical ingenuity directed to that laudable end. But the naked statement in 3 Kernan, that they are not contradicting the doctrines in 4 Selden, our intelligence forbids us to credit. However, the 3 Kernan rule is both the best in sense and latest in time, and may be regarded as conclusive of the views of the New York judiciary :" Morse on Banks and Banking, 247. If this be so, then we have gotten back to the law as laid down by Judge Story.

You may call a draft like the one before us a bill of exchange, if you please; the substantive question is, is such a draft entitled to days of grace? And if evidence of usage is to be received, I apprehend the question is settled. What bank ever has claimed days of grace on such paper? What bank would dare to claim them? What would its business be worth in a commercial community an hour after such a claim was known to have been made? Suppose a merchant in Atlanta, who bought goods in New York at ninety days, gives his note for them, and, a few days before it falls due, desires to return to New York to make new purchases. His books tell him his note will become due three days after he leaves. He draws upon his banker and makes his check payable on the day his note falls due, and leaves for New York in perfect confidence that the note will be met at maturity. His house is notified that the note is deposited in one of the Atlanta banks for collection, his clerk presents the check left to meet it at his bankers; the reply is, "Yes, there are funds here to meet it, but the paper presented is not a check, it is a bill of exchange, payable at a day subsequent to its date;

we claim three days of grace on it." The note goes to protest, and the merchant, by this time in New York, is astonished to find in the hands of the payee a telegram announcing the protest, and that his credit is shaken. Again, a gentleman, whose insurance policy is nearly run out, desires to leave the city, and to be absent for some length of time. He leaves a check at his insurance office for the next year's premium, payable on the day the policy expires; it is presented, days of grace claimed, a failure to insure the consequence, where the premium is strictly required in advance, and his goods or house burned during the three days of grace. The practical reply to all this is, that no bank will be so short-sighted as to avail itself of the privilege extended to it by the Courts. But that does not meet the difficulty when it becomes necessary to charge an indorser. The illustrations are given to show that the uniform usage must be, (as, in fact, it is,) with all banks, to pay such checks on the day they fall due, without grace, if presented. If such be the usage of the banks, what is the contract of the indorser? Let it be borne in mind that checks upon banks, payable at a future day, are a comparatively recent innovation upon commercial usage. "A great portion of the mercantile law of this country, as well as of England, has been derived from mercantile usages, which have from time to time incorporated themselves with, and finally become settled rules of the common or unwritten laws of both countries:" Opinion of Chancellor Walworth, in Allen *vs.* Merchants' Bank of N. Y., 22 Wendell, 222.

"The law merchant was not made. It grew. Time and experience, if slower, are wiser law makers than legislative bodies. Customs have sprung from the necessities and the convenience of business, and prevailed, in duration and extent, until they acquired the force of law. This mass of our jurisprudence has grown, and will continue to grow, by successive accretions:" Judge Swayne, in Merchants' Bank *vs.* State Bank, 10 Wallace, 647. In that case, one of the questions raised was, were the drafts sued on checks or bills of

exchange? They were in the ordinary form of checks, but certified by the cashier of the State Bank as "good." A two cent stamp only was on each check. It was contended that the certificate of the cashier was equivalent to an acceptance; that, therefore, the papers were bills of exchange and were not properly stamped. The Court held the drafts to be checks. In the course of his remarks, Judge Swayne takes occasion to point out the difference between bills of exchange and bank checks. He says, "Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper, and many of the rules of the law merchant are alike applicable to both. Each is for a specific sum, payable in money. In both cases there is a drawer, a drawee and a payee. Without acceptance, no action can be maintained by the holder upon either against the drawee. The chief points of difference are, that a check is always drawn on a bank or banker. No days of grace are allowed. The drawer is not discharged by the *laches* of the holder in presentment for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time. It is, by its face, the appropriation of so much money of the drawer, in the hands of the drawee, to the payment of an admitted liability of the drawer. It is not necessary that the drawer of a bill should have funds in the hands of the drawee. A check, in such a case, would be a fraud." Judge Swayne, in the foregoing quotation, has noticed every conceivable difference between a check and an inland bill of exchange, save the one now under discussion, if it exists. He nowhere says that a check is never made payable at a future day. If, in his opinion, such a distinction existed, he would probably have said so.

In further illustration of the practical inconvenience of holding a commercial community to a technical rule of law never intended to apply to a paper like the one under consideration, suppose a check of this character drawn on a bank solvent on the day the check, according to its face, is

payable. The holder knows the usage of the bank to pay such checks without grace, and yet neglects to present it on the day named for payment in the check. Within the three succeeding days the bank fails. Can he hold the drawer liable by going through the form of presenting it at the bank for payment on the third day after the day on which he might, with proper diligence, have obtained his money?

If Chancellor Walworth and Judge Swayne are correct (as undoubtedly they are) in saying the law merchant grew and will continue to grow, it is hardly safe to rely entirely on what was considered to be the law in questions of this character when "Blackstone wrote his commentaries on the common law." Perhaps a too strict reliance on what was then considered to be the law merchant, without taking the trouble to investigate its subsequent growth as found in the later decisions and in the ever-varying *usage among merchants*—its very soul and spirit—may have led some of our Judges into the error of holding obsolete ideas as living law. Certain it is, in this country, that the Courts of New York, the commercial centre of the country, are now disposed, as already shown, to let in evidence of *local* usage to show that a check payable at a future day is not entitled to grace. This, it is respectfully submitted, abandons the whole controversy. If local usage will make the law for a particular case, universal usage should make that law general. And whenever the Courts will permit evidence of usage on the part of the banks in paying these checks, I hazzard nothing in saying it will be found to be universally true that the banks pay these without demanding days of grace. And if this is so, it answers the question as to what the contract of the indorser is. It can be nothing else than an engagement to pay the check if the bank fails to do so *according to the agreement of the drawer*, to-wit: on the day it falls due, without grace.

That evidence of usage of the bank is admissible to bind the parties even though they were ignorant of the usage, and that usage varied the law so far as to admit of protest

on the fourth instead of the third day after a note is, by its face, payable: See Bank of Washington *vs.* Triplett, 1 Peters, 32–3; Mills *vs.* Bank of the United States, 11 Wheaton, 430; Benner *vs.* The Bank of Columbia, 9 Wheaton, 582. In 11 Wheaton, the Court say: " When a note is made payable or negotiable at a bank, whose invariable usage it is to demand payment, and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal knowledge of it or not." If usage can add one to the number of days of grace, why may it not strike three off? " In the case of such a note," say the Court again, " the parties are presumed, by implication, to agree to be governed by the usage of the bank at which they have chosen to make the security itself negotiable." In case of a check payable at a future day, the parties are presumed, by implication, to agree to be governed by the usage of the bank at which they have chosen to make the security itself payable. The analogy, in principle, seems to me to be so close as to amount to identity.

Our own Code, sections 3751–3752, provides that " the surrounding circumstances are always proper subjects of proof to aid in the construction of contracts."

" In like manner evidence of known and established usage is admissible for the same purpose *as well as to annex incidents.*" If to annex incidents, why not to show that they do not attach ?

Mr. Morse, in his treatise, already referred to, page 379, again says : " The latest authority in New York is the decision in the case of Bowen *vs.* Newell, as last rendered and revised, published in 3 Kern., 290. Here the Court say that the lower Court have found that the law in Connecticut, where the paper was payable, gives no days of grace upon it; that this finding of the law was upon evidence derived from the best sources and of the most unquestionable character." By turning to the report of the cause in the lower Court, (2 Duer, 584,) we find that this so emphatically excellent evidence, which was allowed so thoroughly to settle the law,

was simply evidence of the usage of banks and of persons dealing with banks in Connecticut. The Court escape the trouble of reconciling this view with their former contrary one, by the arbitrary assertion that in 4 Selden they only held that, *by the law merchant*, the instrument was not (was?) entitled to grace. This assertion will satisfy nobody, for it is not true. But its degree of accuracy is a matter of little moment, since the last ruling in 3 Kernan is too clear and positive to leave any doubt as to the law in New York State.

"The doubt is simply whether or not the allowance or disallowance of grace upon a certain anomalous discription of paper is a proper subject of usage. Why it should not be so, it is difficult to say. It is clear that such paper, whether it be called a check or a bill of exchange, is a materially modified form of either. It is in fact an independent species of paper. When, therefore, it is considered that the entire principle which gives days of grace upon particular species of commercial paper was, in its origin, wholly a matter of usage among bankers, there seems no reason why the same usage, if actually shown to exist, should not be properly extended to still another species of paper of comparatively modern origin.

" It is clear that the allowance of grace on business paper, is a proper subject of usage since it owes its very existence to usage."

Why were days of grace ever allowed on commercial paper? For no other reason than as an indulgence to give the drawee, who owed a debt to the drawer, time to call in his resources to meet the demand: Story on Promissory Notes, section 215–223. In the case of a check upon a bank, whether papable on demand or at a future date, the case is different. It is simply a transfer of funds of the drawer *on deposit* to the payee. In legal contemplation, and in fact, the funds are in the vaults of the bank to meet the check. Why then should grace be allowed? Ceasing the reason, the law should cease. With regard to the case of Harker *vs.* Anderson, 21 Wendell, 372, relied on by Judge Warner in Hen-

derson *vs.* Pope, as sustaining the position that a check is a bill of exchange and therefore entitled to grace, in addition to what has already been said, I have two remarks to make, 1st. The only question then before the Court, and *decided* by it, (see the Chief Justice's and Bronson, Justice's, concurrence, 389,) was, is a drawer of a check entitled to notice of non-payment? Decided that he was.  2d. The opinion of Cowan, Judge, that "a check is a bill of exchange" is not called for by the case, and is at variance with all recent authorities.  See the opinion of Judge Swayne, quoted *supra*, which will be found to correspond with that of Chancellor Kent, Judge Story and others.

I think I have said enough to show that it was at least a very doubtful question in Georgia before the case of Henderson *vs.* Pope, whether a draft on a bank, payable at a future day, but in other respects drawn like an ordinary check, was entitled to days of grace or not.

2. If the question was as doubtful, as I insist it was, then surely the bank which, in its character of collector, was a bailee for hire, and bound only to use ordinary diligence, should not be held responsible for the mistake made in the absence of any instructions from the holder as to when it should be protested.  That the only responsible indorser on the note told the bank officers that the paper was entitled to grace, can make no difference.  Without for a moment intimating that in this case the indorser would do such a thing, still it was his *interest* to mislead them; a mistake enured to his benefit.  Suppose he had advised them wrongly and they had acted on his advice, would such an excuse have been listened to?  The dictates of ordinary prudence in such a case would teach them to beware of a gift-bearing Greek.

The Mechanics' Bank of Baltimore *vs.* Merchants' Bank of Boston, 6 Metcalf's Reports 13, was just such a case as the present.  That was a suit against the defendant for not presenting for payment, and protesting for non-payment, a post note of a bank which had failed between the time of issuing the note and the time it fell due.  In the margin of

the note was written "Due July 12th, 1837, $1,000, interest $11,25; no interest payable after due;" there were several indorsers on the note. The note was presented and protested on July 12th, instead of July 15th. The evidence showed that the banks never claimed grace on post notes. The Court held that the indorsers were discharged by reason of a positive statute of Massachusetts giving days of grace "on all promissory negotiable notes, orders and drafts, payable at a future day certain," but they held that the defendant was not liable because the question was so doubtful a one, which excused them for looking rather to the usage than to the statute controlling the question. At least as grave a doubt existed in Georgia before the case of Henderson *vs.* Pope.

Hence my dissent.