By the Court.
Campbell, J.
—A motion is made by the defendant, Newell, to set aside a report of a referee, to whom all the issues were referred. The only point argued before us, arose out of the question, whether the defendant, Newell, was liable, as endorser, upon the instrument, of which the following is a copy:

This instrument was presented for payment, at the Thompson Bank, in Connecticut, by the drawee, on the 12th of .October, 1849, and payment was refused, the drawers not having funds, and on the same day, notice of such dishonor was given to the endorser. It was contended, by the defendants, that this was a bill of exchange, and entitled to days of grace. The plaintiffs insisted that it is a check, and therefore, no days of grace allowed; and even if not a check, that it was not entitled to days of grace, because the usage of the drawee, and of all banks in Connecticut, as found by the referee, is not to allow days of grace on such instruments. There was a great effort made, by the late Mr. Justice Cowen, to do away Avith all distinctions between checks and bills of exchange. (See his opinion, at length, in Hooker v. Anderson, in 21 Wend. 372.) His views were not sustained bj the other judges in that case ; and in Li *328 tte v. Phœnix Bank, in 2 Hill, 425, they are expressly commented on and disapproved of. There are many points of resemblance between a check and a bill of exchange, especially in this country. In England, checks perform a much more limited operation, because restricted by the Stamp Acts. There, in "order to bring checks within the exemption of the stamp duty, “ they must be drawn on a banker ; must specify truly the place where actually drawn ; and the place must be within fifteen miles of the banker's place of business. They must be payable to bearer on demand, must not be post dated, nor direct the payment to be made by bills or notes.” (Byles on Bills, p. 11; 45 Law. Lib. p. 60.) Such are the restrictions imposed by the English statutes, and which are always to be borne in mind, when referring to English cases. Only one of these restrictions applies to checks, as used and defined in this country ; that is, they must be drawn on a bank or banker. The definition of a check, in Burrell’s Law Dictionary, is “a written order or request, addressed to a bank, or to persons carrying on the business of bankers, by a party having money in their hands, requesting them to pay on presentment, to a person named therein, or to him, or bearer, or order, a named sum of money.” Mr. Justice Story (in the matter of Brown, 2 Story’s Reports, 502), says : “ I agree, that it (i. e. a check) nearly resembles a bill of exchange; but nullum simile est idem. The distinguishing characteristics of checks, as contra-distingnished from bills of exchange, are, (as it seems to me) that they are always drawn on a bank or banker, that they are payable immediately on presentment, without the allowance of any days of grace, and that they ar.e never presentable for mere acceptance.” In England, a check cannot be post dated, because it would then operate as a bill of credit, and must be stamped. And for the same reason, a check on a bank, to be presented and paid on a future certain day, would be invalid. Not so here, where there is no stamp act. In the case of Brown, referred to, Judge Story lays down the rule : “ Thus, if a check be dated on the first December, and be payable on the tenth December, it is presentable on the latter day ; and on presentation, on that day, it will be paid by the bank. It is never presented for acceptance, and no days of grace are ever allowed upon it. In short, it is always treated as payable *329 on the very day designated, as the day of payment.” It will be seen that such is precisely the case of the check in question, and we entirely concur in the ruling in the case of Brown. (See also Harris v. Clark, 3 Comstock, p. 114,115.) But the referee also found that ,it had been the uniform usage of the Thompson Bank, and of the other banks, in the state of Connecticut, to pay checks, or instruments of the form in question, on the day specified in them for the payment thereof, if presented on that day, and the drawee had funds to pay them, and if not paid, on demand of payment, on that day, then to protest them, for non-payment on that day, and notify the drawers and endorsers thereof; and he decided, that, in “judgment of law, the defendant was bound by such usage. (Bank of Washington v. Triplett, 1 Peters, 80; Mills v. U. S. Bank, 11 Wheaton, 431.) This ruling of the referee, we think entirely correct, and, even if the instrument in question, had been considered a bill of exchange, instead of a check, the endorser would have been properly charged by its protest, on the day it was made payable in terms, without days of grace. Days of grace, which, as the words import, are days of indulgence, had their origin at an early period in the history of negotiable paper. They are an allowance of time beyond that fixed by the terms of the instrument itself, governed not generally by statutory enactments, but by usage, general but not universal. But the usage which governs, is that of the place where the bill is made payable, and when such is proved to be general and well established, it becomes the law of the contract. “ It may be laid down, as a general rule, that the law of the place, where the bill is payable, is to govern not only as to time, but as to the mode of presentment for payment.” (Story on Bills of Exchange, sec. 334, and cases cited ; Duer On Insurance, vol. 1, pp. 176,177; Opinion of Thompson, J., Renner v. Bank of Columbia, 9 Wheaton, 587.) Now the usage of this bank, on which the draft or instrument in question was drawn, as well as the usage of all the banks in the state of Connecticut, made it payable on the specified day, indicated on its face, without adding days of grace. That is the law of this contract, and the endorser was properly and legally charged.
The judgment, appealed from, is affirmed, with costs.