JAMES T. HARRISON *vs.* NICOLLET NATIONAL BANK OF MINNEAPOLIS.

October 18, 1889.

**Time Draft on Bank—Grace.**—A draft for money drawn on a bank, payable at a day subsequent to its date and subsequent to the date of its issue, is not a "check," but a "bill of exchange," and is entitled to days of grace.

**Bank Check.**—It is an essential characteristic of a check that it is payable on demand.

Appeal by plaintiff from an order of the district court for Hennepin county, *Rea,* J., presiding, sustaining a demurrer to the complaint. The action was to recover $20,000 damages for that the defendant on April 14, 1888, and before the maturity thereof, did "falsely, wrongfully, and maliciously" cause to be protested the following instrument, which had been indorsed and forwarded to defendant for collection, thereby injuring plaintiff's credit, etc.:

"45 Washington Ave. South,

HARRISON the TAILOR.

"$199.92.　　　　　MINNEAPOLIS, MINN., Mch. 27th, 1888.

"On April 14th pay to the order of E. Harrison one hundred and ninety-nine 92-100 dollars.

"J. T. HARRISON.

"To Citizens' Bank

"Minneapolis, Minn.

"No. 2,884."

*Carman N. Smith,* for appellant.

*Woods & Kingman,* for respondent.

MITCHELL, J.   This appeal presents the question whether a written order on a bank or banker to pay a sum of money at a day subsequent to its date, and subsequent to the date of its issue, is a "check," or a "bill of exchange," and hence entitled to grace.   The question is one which has given rise to considerable discussion and some conflict of opinion.   About all the law there is on it, as well as all the arguments on each side, will be found in Morse, Bank. (3d Ed.) § 381 *et seq.*   The two principal authorities holding such an instrument a check are *In re Brown,* 2 Story, 502, and *Champion* v. *Gordon,* 70 Pa. St. 474.   Both of these are entitled to great weight, but they stand almost alone; the supreme courts of Rhode Island (*Westminster Bank* v. *Wheaton,* 4 R. I. 30) and perhaps of Tennessee being, so far as we know, the only ones which have adopted the same views.   All other courts which have passed upon the question, as well as the text-writers, have almost uniformly laid it down that such an instrument is a bill of exchange, and that an essential characteristic of a check is that it is payable on demand.   This was finally settled, after some conflict of opinion, in New York,—the leading commercial state of the Union,—in the case of *Bowen* v. *Newell,* (several times before the courts,) 5 Sandf. 326, 2 Duer, 584, 8 N. Y. 190, and 13 N. Y. 290, (64 Am. Dec. 550.)   See, also, *Morrison* v. *Bailey,* 5 Ohio St. 13, (64 Am. Dec. 632;) *Woodruff* v. *Merchants' Bank,* 25 Wend. 673; *Minturn* v. *Fisher,* 4 Cal. 35; *Bradley* v. *Delaplaine,* 5 Har. (Del.) 305; *Georgia Nat. Bank* v. *Henderson,* 46 Ga. 487; *Ivory* v. *Bank of State of Mo.,* 36 Mo. 475, (88 Am. Dec. 150;) *Work* v. *Tatman,* 2 Houst. 304; *Hawley* v. *Jette,* 10 Or. 31; 2 Daniel, Neg. Inst. §§ 1573–1575; Morse, Bank. *supra.*

Nearly every definition of a check given in the books is to the effect not only that it must be drawn on a bank or banker, but that it must be payable on demand.   1 Rand. Com. Paper, § 8; Byles, Bills, 13; 2 Daniel, Neg. Inst. § 1566; 1 Edw. Bills, § 19; Bigelow, Bills & N. 116; Chalm. Dig. Bills & N. art. 254; Shaw, C. J., in *Bullard* v. *Randall,* 1 Gray, 605; Bouv. Law Dict.; Burrill, Law Dict.   Occasionally the expression is used "payable on presen-

tation," but evidently— except perhaps in Story on Bills—as synonymous with "payable on demand."

As the question is a new one in this state, we would not feel compelled to follow the majority if the better reasons were with the minority. Perhaps the weightiest argument in favor of holding such an instrument a check is the practical one advanced by Sharswood, J., in *Champion* v. *Gordon, supra,* viz., that if held to be a bill of exchange the holder might immediately present it for acceptance, and if not accepted he could sue the drawer, or if accepted it would tie up the drawer's funds in the hands of the bank, and thus, in either case, frustrate the very object of making it payable at a future day. In answer to this, it may be said that the drawer, if he wished, could very easily avoid such consequences by inserting appropriate provisions in the instrument. On the other hand, if we hold that an instrument not payable on demand may be a check, we are left without any definite or precise rule by which to determine when the paper is a check, and when a bill of exchange. The fact that it is drawn on a bank is not alone enough to distinguish a check from a bill of exchange, for nothing is better settled than that a bill of exchange may be drawn on a banker. Neither will the fact that the maker writes it on a "blank check" be any test, for the kind of paper it is written on cannot control the import and legal effect of its words. Neither can the question whether it is drawn against a previous deposit of funds by the drawer with the drawee furnish any criterion, for nothing is clearer than that a bill of exchange, as well as a check, can be drawn against such a deposit, and that an instrument may be a check although the drawer has no funds in the hands of the drawee. Neither will it do to say that if it is entitled to grace it is a bill, but if not entitled to grace it is a check, because the legal character of the instrument has first to be determined before it can be known whether or not it is entitled to grace. In short, if we omit from the definition of a check the element of its being payable on demand, bankers and business men are left without any definite rule by which to govern their action in a matter where simplicity and precision of rule are especially desirable. It might be expedient to enact, as has been done in New York and some other states, that all checks, bills of exchange, or

drafts, appearing on their face to be drawn on a bank or banker, whether payable on a specified day or any number of days after date or sight, shall be payable on the day named in the instrument without grace; or, what might be better still, to abolish days of grace altogether as a usage which has already long outlived the condition of things out of which it had its origin.    But this is a matter for legislatures and not for courts.    We are therefore of opinion that the better rule is to hold that such an instrument is a bill of exchange, and hence entitled to grace.    We may add that it is always desirable that the decisions of the courts should be in accord with the business usages and customs of the country.    Such usages are entitled to special weight on a question like this, for the whole matter of grace on bills and notes had its origin in the usage of bankers.    And, so far as we are advised, the general practice of bankers in this state has been to treat instruments like this as bills of exchange and not checks.

Counsel for respondent suggests that, even if we hold that payment of this paper was demanded and protest made prematurely, yet the action of the court below in sustaining the demurrer to the complaint should be affirmed on other grounds, viz., that the act of protesting, etc., was the act of the notary and not of the bank; that the protest could not have damaged the financial standing of plaintiff because the certificate of the notary shows on its face that it was done before maturity; also, that the instrument being of doubtful classification, involving a legal question on which courts differed, the defendant would not be liable for an honest mistake of law.    Whatever force there might be in these suggestions, either by way of defence or in mitigation, we think they are unavailing in support of a demurrer to a complaint which alleges that the defendant "falsely, wrongfully, and maliciously caused" the paper to be protested for non-payment, and notices of protest sent out, and which also shows that such notices—which were presumably what, if anything, injured plaintiff's standing and credit—contained nothing indicating that payment was prematurely demanded.

Order reversed.