CHARLES A. ESTES *vs.* LOVERING SHOE CO.

Submitted on briefs Nov. 20, 1894.    Affirmed Dec. 28, 1894.

No. 8959.

**Possession of a check is evidence that the indorsement is genuine.**
A check is within the purview of 1878 G. S. ch. 73, § 89, which provides that, in actions brought on promissory notes or bills of exchange by the indorsee, possession of the note or bill is prima facie evidence that the same was indorsed by the person by whom it purports to be indorsed.

**A check taken six days after it is drawn, not subject to defenses.**
The well-settled rule, in cases where no question arises as to the discharge of an indorser, or of the failure of the bank in the meantime on which a check is drawn, is that a holder who, in good faith and for value, takes a check several days after it is drawn, receives it without being subject to defenses of which he had no notice before or at the time his title accrued.

**Check not stale six days after its date.**
In this case the checks were drawn in St. Paul, Minn., on a local bank, October 26, 1893. The plaintiff in good faith cashed them at the payee's request, within six days thereafter, at Denver, Colo. *Held,* that the checks were not stale or overdue when cashed, and that there was nothing suspicious in the mere fact that the payee sought to cash the checks at a point some distance from the city in which they were drawn.

Appeal by defendant, Lovering Shoe Company, a corporation, from an order of the District Court of Ramsey County, *Hascal R. Brill,* J., made May 15, 1894, denying its motion for a new trial.

A. J. Moore of Boston, Mass., was a traveling solicitor of ad-

vertisements for a boot and shoe journal published at New York. On October 26, 1893, he called on defendant, a shoe merchant of St. Paul, and solicited patronage for the paper. To accommodate him defendant took his two checks for $100 each on the Manufacturers National Bank of Boston and gave him $50 cash and its two checks, one for $50 and the other for $100 on the Merchants National Bank of St. Paul. Moore stated that he was not as well known to the shoe trade as defendant and that he had difficulty sometimes in getting his own checks cashed for traveling expenses, but as defendant was well known in the west its checks would be more readily cashed. He stated that he had $2,000 on deposit in the Boston Bank. Defendant indorsed and sent forward Moore's checks for payment, but they were not paid and were protested and returned. On November 1, 1893, at Denver, Colo., Moore indorsed defendant's checks and procured the money on them from the plaintiff, Charles A. Estes, a retail shoe merchant of that place. They were forwarded by plaintiff for payment, but on presentation were not paid and were protested. Defendant, having heard of the nonpayment of Moore's checks, stopped payment of its own checks. Plaintiff brought this action on the checks and on the trial offered them in evidence, under 1878 G. S. ch. 73, § 89, without proof of the genuineness of Moore's indorsement. Defendant objected, but the court overruled the objection and it excepted to the ruling. By direction of the Judge, plaintiff had a verdict for $150, interest and protest fees. Defendant moved for a new trial and appeals from the order refusing it.

*Wm. G. White,* for appellant.

The court erred in admitting in evidence the checks without proof of Moore's signature thereon. 1878 G. S. ch. 73, § 89, provides that in actions brought on promissory notes or bills of exchange by the indorsee, the possession of the note or bill is *prima facie* evidence that the same was indorsed by the person by whom it purports to be indorsed. This section does not refer to checks but simply promissory notes and bills of exchange, and checks are not included within either of these descriptions. *Harrison* v. *Nicollet Nat. Bank,* 41 Minn. 488; *In re Brown,* 2 Story 502; *Johnston Harvester Co.* v. *Clark,* 30 Minn. 308.

The court below directed a verdict for the plaintiff largely upon the ground that there was no evidence of fraud. This was in effect a ruling that the representation of Moore, that he had money on deposit in the Manufacturers National Bank of Boston, was not shown to be false. This was error as there was ample evidence that his checks were worthless and that he never had any money in that bank. The statute makes the instrument of protest admissible in evidence and declares that it shall be received in all the courts of the state as *prima facie* evidence of the facts therein certified. *Bettis* v. *Schreiber*, 31 Minn. 329; *Rushworth* v. *Moore*, 36 N. H. 188; *Union Bank* v. *Middlebrook*, 33 Conn. 95; *Ticonic Bank* v. *Stackpole*, 41 Me. 302; *Orono Bank* v. *Wood*, 49 Me. 26; *Pattee* v. *McCrillis*, 53 Me. 410; *Lewiston Falls Bank* v. *Leonard*, 43 Me. 144; *Phillips* v. *Poindexter*, 18 Ala. 579; *Elliott* v. *White*, 6 Jones 98.

It was not necessary to prove that Moore was insolvent, and the mere fact that his checks were properly presented for payment and payment refused establishes a *prima facie* case for defendant.

The checks were stale and overdue when transferred to plaintiff at Denver six days after their date. This should have been left to the jury under proper instructions. There was evidence from which the jury might have found that the plaintiff took the checks at a date and under circumstances that ought to have excited his suspicion and which were at least sufficient to put him upon inquiry. *Smith* v. *Janes*, 20 Wend. 192; *Mohawk Bank* v. *Broderick*, 13 Wend. 133; *Gough* v. *Staats*, 13 Wend. 549; *National State Bank* v. *Weil*, 141 Pa. St. 457; *London & C. Banking Co.* v. *Groome*, 8 Q. B. Div. 288; *Rothschild* v. *Corney*, 9 B. & C. 388; *Down* v. *Halling*, 4 B. & C. 330.

The cases in Massachusetts are not opposing authorities to this doctrine. *First Nat. Bank* v. *Harris*, 108 Mass. 514; *Ames* v. *Meriam*, 98 Mass. 294.

*Holcombe & O'Reilly*, for respondent.

A check is a negotiable instrument the use of which has become more general and prevalent in transacting business than bills or notes, and to hold that in a suit thereon by the indorsee the signature of the indorser must always be proved, would be harsh and

oppressive and greatly restrict the circulation of this class of commercial paper, to the great inconvenience of business men.

If there was evidence of fraud it would have been error to submit the question to the jury, unless there was also proof. that the plaintiff was not a *bona fide* purchaser for value before maturity. There was no such proof. *National Bank of Battle Creek* v. *Mallan,* 37 Minn. 404; *Goodman* v. *Harvey,* 4 Ad. & E. 870; *Uther* v. *Rich,* 10 Ad. & E. 784; *Arbouin* v. *Anderson,* 1 Ad. & E. (N. S.) 498; *Stephens* v. *Foster,* 1 Cromp. M. & R. 849; *Marston* v. *Allen,* 8 Mees. & W. 494; *Saltmarsh* v. *Tuthill,* 13 Ala. 390; *Kinyon* v. *Wohlford,* 17 Minn. 239; *Murray* v. *Lardner,* 2 Wall. 110; *Goodman* v. *Simonds,* 20 How. 343; *Swift* v. *Tyson,* 16 Pet. 1; *Rosemond* v. *Graham,* 54 Minn. 323.

The checks were not stale or overdue or subject in the hands of plaintiff to any equitable defenses that might have been urged against them in the hands of Moore. *Ames* v. *Meriam,* 98 Mass. 294; *In re Brown,* 2 Story, 502; *Rothschild* v. *Corney,* 9 B. & C. 388; *Lancaster Bank* v. *Woodward,* 18 Pa. St. 357; *Serrell* v. *Derbyshire Ry. Co.,* 9 C. B. 311; *Poorman* v. *Mills,* 39 Cal. 345; *Cowing* v. *Altman,* 71 N. Y. 435; *First Nat. Bank* v. *Harris,* 108 Mass. 514; *Stewart* v. *Smith,* 17 Ohio St. 82; *La Due* v. *First Nat. Bank,* 31 . Minn. 33.

COLLINS, J.    Plaintiff's action was to recover the amount of two checks, drawn October 26, 1893, by defendant corporation at its place of business in St. Paul, Minn., upon a local bank, and made payable to the order of one A. J. Moore.    The latter, it was claimed, for value received, duly indorsed and delivered them to plaintiff, about five days after they were drawn, at his (plaintiff's) place of business in Denver, Colo.    Under the direction of the court below, a verdict was returned for plaintiff.

On two points the evidence was conclusive—*First,* that the checks were obtained by Moore by means of false and fraudulent practices and representations and without consideration.    *Second,* that plaintiff in good faith received them from Moore, the payee, with his name already written upon the backs thereof, giving him in cash their

full face value. The checks with the purported indorsements were received in evidence over defendant's objection that no proof had been offered of the genuineness of the payee's signatures or purported indorsements.

Aside from any consideration of the fact that the payee personally presented these checks with his name already written upon the back of each, and thus obtained the amount thereof from plaintiff, we are of the opinion that a check comes within the purview of 1878 G. S. ch. 73, § 89, which provides that, in actions brought on promissory notes or bills of exchange by the indorsee, possession of the note or bill is *prima facie* evidence that the same was indorsed by the person by whom it purports to be indorsed.

. While in some respects checks differ from inland bills of exchange,—and the differential qualities are pointed out in *Harrison* v. *Nicollet Nat. Bank*, 41 Minn. 488, (43 N. W. 336,)—they are negotiable instruments much used, and growing in use, in business transactions, and possessing about all of the characteristics of inland bills. They have been defined as, in legal effect, inland bills of exchange drawn on bankers, and payable to a bearer (or order) on demand (Byles, Bills [7th Am. Ed.] 1), and as bills with some peculiarities or a species of bills (2 Daniel, Neg. Inst. 584). In view of the close relationship between these instruments and the fact that the statutory rule should be the same in actions brought on bills of exchange, strictly speaking, and checks, we think that the latter are covered by the statute under consideration.

It is argued by counsel for appellant that these checks were stale and overdue when transferred to the plaintiff, and are therefore subject to any equitable defense which might have been available so long as they remained in the hands of the payee; but the decided weight of authority is opposed to this claim. It is to be borne in mind that no question as to the discharge of an indorser by delay in presentation, or by the failure of the bank meantime on which the checks were drawn, arises here, but the attack is made by the maker solely upon the consideration. As before stated, the checks were drawn and dated October 26th, at St. Paul, and were cashed about five days later (six days at most) in Denver, Colo., and there were no circumstances, except the period of time which had

passed, and the fact that the payee was attempting to cash the checks at a point some distance from the city in which they were drawn, to put plaintiff on his guard.

In these days of large business enterprises and extraordinary facilities for traveling there was nothing suspicious in the fact that the checks were presented at a city distant from that in which they were drawn and made payable; and, as to the time, the rule is well settled that a holder who, in good faith and for value, takes a check several days after it is drawn, receives it without being subject to defenses of which he had no notice before or at the time his title accrues. Morse, Banks, § 442, and cases cited. In one of these cases (*Rothschild* v. *Corney*, 9 Barn. & C. 389) the check in dispute was taken six days after date. In another (*Ames* v. *Meriam*, 98 Mass. 294) ten days had elapsed. These views dispose of the appeal.

Order affirmed.

(Opinion published 61 N. W. 674.)