M. S. BURROWS v. WESTERN UNION TELEGRAPH COMPANY.[1]

June 20, 1902.

Nos. 13,069—(165).

### Check Delivered to Wrong Person—Innocent Purchaser.

A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee.

Action in the municipal court of Duluth to recover $50 and interest upon a bank check issued by defendant. The case was

[1] Reported in 90 N. W. 1111.

tried before Edson, J., who directed a verdict in favor of plaintiff for the sum demanded. A motion for judgment notwithstanding the verdict or for a new trial having been denied, defendant appealed to the district court for St. Louis county. From an order, Ensign, Cant and Dibell, JJ., reversing the order of the municipal court and directing the entry of judgment in favor of defendant, plaintiff appealed to the supreme court. Reversed, with directions to affirm judgment of municipal court.

*J. B. Richards*, for appellant.

*Greene & Wood*, for respondent.

LEWIS, J.

The firm of Scheffer & Rossum, of St. Paul, had in their employ a traveling agent by the name of Joseph E. Jerome, who resided and made his headquarters at Crookston, Minnesota. On October 8, 1900, a telegram was received by the firm as follows:

"Duluth, Minn., Oct. 8th, 1900.
Receiver's No. 12G.
Time filed, 11.25 a. m.   10 Paid.   Rush.
    To Scheffer & Rossum,
            St. Paul, Minn.:
Telegraph me $50.00 at once; extra deal.
                                    [Signed] J. E. Jerome.
Will call."

In response to this message the firm paid $50 to the respondent company at St. Paul, and the agent of the telegraph company at Duluth was authorized to pay the money to Joseph E. Jerome. Mr. Fletcher, the Duluth manager, made out a check for the amount, and handed it to Mr. Kent, the cashier. When the instructions were received from St. Paul to pay the money, the supposed Jerome was in the office, and it was known to Kent that he was the party who wired for the money. The imposter then went to get some one to identify him, and soon after six o'clock in the evening he called again in the company of one Belleveau, a resident of Duluth, who identified him as Joseph E. Jerome, whereupon the following check was delivered to him:

"No. 706.

Western Union Tel. Co.,

Duluth, Minn., October 8th, 1900.

American Exchange Bank:

Pay to the order of Joseph E. Jerome fifty and no 100 dollars. $50.00.

[Signed] G. E. Fletcher,
Office Manager."

A receipt was taken, signed by Joseph E. Jerome, the date of which shows that the check was issued at 6.40 p. m. The party who obtained the check, in company with Belleveau, went immediately across the street to a store of appellant, and purchased a hat, offering the check in payment. He indorsed the check, writing the name "Joseph E. Jerome" on the back thereof, received the difference in cash, and departed. The telegraph company having discovered that the party receiving the check was not in fact the Joseph E. Jerome in the employ of Scheffer & Rossum, stopped payment of the check, and the present action was brought by appellant to recover the amount paid thereon.

This presents a question somewhat difficult of solution. We have found no case in the books presenting exactly the same facts. It is well settled that a bank has no authority to pay out the money of its depositors upon a check where the name of the payee has been forged. It is also the law that where the entire transaction is fictitious, and the payee and check have no existence in fact, at no time does such a check obtain legal status, no matter whether parties deal with it in good faith or not. It has been decided that where a check has been issued, payable to a certain party as payee, and another party of the same name comes into possession of it either by mistake or fraud, and forges the signature of the real party, this does not give the check any legal status, so as to protect a bank against which it was drawn. Mead v. Young, 4 Term R. 28; Graves v. American, 17 N. Y. 205; Famous v. Crosswhite, 124 Mo. 34, 27 S. W. 397. The authorities on this subject are quite thoroughly reviewed in the note to Land v. Northwestern (196 Pa. St., 230,) 50 L. R. A. 75, 84, and thus summarized: "Whatever the true theory may be, it is apparent from the foregoing cases that the drawer of a check, draft, or bill

of exchange, who delivers it to an impostor, supposing him to be the person whose name he has assumed, must, as against the drawee or bona fide holder, bear the loss, where the impostor obtains payment of or negotiates the same. On the other hand, if the check, draft, or bill is delivered to an impostor who has assumed to be the agent of the person named as payee, the loss will not fall on the drawer, at least if he was free from negligence, and there was a real person bearing that name, whom he intended to designate as payee." But not one of the cases there reviewed presents exactly the same state of facts as are now under consideration.

In order to apply the general legal principles recognized in commercial law to the facts in this case, we must keep in view the relations of the two parties concerned. Scheffer & Rossum intended that the money should be delivered to their traveling agent, and to no one else, and for that purpose they constituted the respondent company their agent. It must be conceded that under the evidence the party who sent the telegram for the money was known to Belleveau, who identified him as Joseph E. Jerome, and that the fraud practiced was in personating the representative of Scheffer & Rossum. But it would make no difference if the impostor had imposed on Belleveau, the name Jerome being in fact assumed. The check, therefore, had a legal inception, because the telegraph company was authorized to issue it, and the mistake was made in issuing and delivering it to the wrong person. The fraud was possible for the reason that the agents of the telegraph company at Duluth accepted as satisfactory the identification which was offered. Whether the agents in so doing exercised reasonable caution, and such care as would relieve respondent from liability to Scheffer & Rossum, we need not inquire; but the Duluth agents exercised their judgment, issued the check, and placed it in the hands of the impostor, and thereby put it into his power to dispose of it to an innocent purchaser. Therefore, conceding that, as between itself and Scheffer & Rossum, it did all that could be required, what was appellant required to do, by the general rules of commercial law, when the check was tendered to him in payment of goods? If the check was in fact a nullity,

and never had any legal existence, then appellant acquired no title to it, even though he had taken the usual method of identifying the indorser as the party receiving it. If the check had been issued and delivered to the right Jerome, and thereafter the impostor had forged his name and presented it, plaintiff would acquire no title, even though the impostor had been identified as the indorsee, because in that case the check would not have been made negotiable by virtue of the indorsement.

The test to be applied is whether, by the usual custom with reference to identification, appellant was negligent in failing to have the party presenting the check identified as the party to whom it was given. It was said in the case of Estes v. Lovering Shoe Co., 59 Minn. 504, 61 N. W. 674, that a check is within the purview of G. S. 1878, c. 73, § 89, which provides that possession of a note or bill is prima facie evidence that the same was indorsed by the person by whom it purports to be indorsed, and checks were brought within this provision of the statute for the reason that they are negotiable instruments, much used and growing in use in business transactions, and possessing all of the characteristics of inland bills. If, therefore, a check is indorsed when presented, it is to be received as prima facie evidence that it is the indorsement of the payee, because such rule is required by the necessities of business. For like reason, when the person indorsing a check as payee, and presenting it, has been identified as the party who received it from the maker, and whom the maker designated as payee, he is presumed to be the payee, and entitled to receive the proceeds.

Appellant was required to do no more in this instance. He was required to determine whether the party presenting the check to him was the person to whom it had been delivered as the payee by the telegraph company. He could have ascertained that fact by accompanying the indorser across the street to the office of the telegraph company, and asking them if this was the party entitled to the check. Or Belleveau, who was waiting at the door of the store, might have been called in, and repeated the identification made to the telegraph company. In such case appellant would have been justified in taking the check. Instead of so doing,

he took his chances as to his being the same man. He was the same, and hence inquiry was unnecessary. Respondent sent the man out with the check, and with the authority to dispose of it in the usual course of business to any one who in good faith believed him to be the party to whom the check had been delivered as payee; and, as against such innocent purchaser, it is estopped from denying the validity of the instrument which it set afloat in the commercial world.

However, it is claimed that appellant was negligent in taking no steps to make inquiry about the personality of the party presenting the check, for the reason that, if he had, he might possibly have discovered that the party was not the real Jerome. We have already answered this objection. It was not the duty of appellant to go beyond the necessities of identification as above outlined, and the mere fact that he might have discovered more than he was required to cannot be charged against him as an act of negligence unless there were facts which should put him upon inquiry. The facts in this case are undisputed. There was nothing to arouse suspicion, and appellant is entitled to the relief sought as a matter of law.

Judgment reversed, with directions to affirm the judgment of the municipal court.

START, C. J. (dissenting).

I dissent. As I understand the record, the evidence conclusively establishes the fact that the manager of the defendant drew its check, payable to the order of the person to whom Messrs. Scheffer & Rossum had directed $50 be paid; that is, to Joseph E. Jerome, who was one of their employees. This particular Joseph E. Jerome was the payee of the check, and alone authorized to indorse it so as to pass title thereto by indorsement. The check was then delivered to the cashier of the defendant, to be delivered to such payee; but the cashier, by mistake induced by the fraud of a third party, delivered the check to him, he having been identified as Joseph E. Jerome. Whether his name was in fact Joseph E. Jerome is not quite clear from the evidence, but it is immaterial whether that was his name or not; for, in any event, he was not

the payee named in the check, and therefore he could not transfer title thereto by indorsement, no matter what his name was.

The case is, then, one where a valid check was made payable to the order of one party, but was delivered by the mistake of the drawer to a third party, who indorsed the check to the plaintiff. It is clear that the plaintiff by such indorsement obtained only an apparent title to the check, for in fact the check was never indorsed by the payee. It would follow that the plaintiff cannot recover the amount of the check from the drawer unless the latter is estopped from showing that the check was not indorsed by the real payee. It seems to me that the defendant is not so estopped. The facts with respect to the indorsement are that the party to whom the defendant delivered the check went directly to the plaintiff's place of business, purchased a hat, and tendered the check in payment therefor, and, upon his writing the name Joseph E. Jerome on the back thereof, the plaintiff accepted it without any investigation whatever, or knowledge as to whether the party so indorsing it, who was a stranger to him, was the payee named therein, and without any knowledge that he was the person to whom it had been delivered by the defendant. The plaintiff could not have relied upon a fact which he did not know. Besides he was guilty of negligence in so accepting the check.

COLLINS, J. (concurring).

On the facts, no distinction can be made between the case at bar and Schuneman v. Tolman, 85 Minn. 130, 88 N. W. 1103, in which a per curiam opinion was written, characterizing the appeal as frivolous, and the questions at issue unworthy of discussion. If the majority opinion here—in which I concur—is not right, our disposition of the Schuneman case was clearly and palpably wrong. Each has been properly disposed of, and no case establishing a contrary doctrine can be cited. In these days it is the duty of the drawer of a check to know that the party to whom it is delivered is the one for whom it was intended. It is his business to ascertain that he has not been imposed upon by a false personation of the party to whom it was intended the check should be made payable.