## JOHNSON ET AL. *v.* HARRISON.

[No. 21,954. Filed March 12, 1912.]

1. BILLS AND NOTES.—*Anticipating Defense.—Complaint.—Practice.*—The proper practice, in an action by the indorsee or holder to recover on a check or other negotiable instrument, is to state his cause of action on the instrument without anticipating and avoiding defenses. p. 247.

2. PLEADING. — *Complaint. — Anticipating Defenses.—Demurrer.*— Where a complaint, in addition to facts constituting a cause of action, states other material and relevant facts which are a defense to the cause of action, without avoiding same, it will not withstand a demurrer. p. 248.

3. PLEADING.—*Complaint.—Allegations.—Disclosure of Possible Defense.*—The allegation of facts in a complaint which incidentally disclose a possible defense is not anticipating a defense. p. 248.

4. BILLS AND NOTES.—*Fraud.—Bona Fides.—Burden.*—The indorsee or holder of a negotiable instrument, put into circulation fraudulently, has the burden of proving that he acquired it for a valuable consideration before maturity and without notice of

the fraud, and he may assume the burden in the first instance by proper allegations in his complaint on the instrument.  p. 249.

5.  BILLS AND NOTES.—*Fraud.—Defenses.—Availability as to Bona Fide Holder.*—That negotiable paper was diverted in fraud of the maker is not available as a defense in an action on the instrument by a *bona fide* holder for value without notice.  p. 250.

6.  BILLS AND NOTES.—*Conditions as to Liability.—Innocent Holder.*—An agreement that the maker of a negotiable instrument shall only be liable thereon on a contingency is not a defense against an innocent holder.  p. 250.

7.  BILLS AND NOTES.—*Bona Fide Holder.—Notice of Lack of Funds to Pay Check.*—Where, at the time of taking a check, knowledge was imparted to the indorsee that the drawee held no money with which to pay same, and it was taken on agreement that such funds would be available at a future date, the taking of the check under such circumstances does not carry with it notice of any fraudulent infirmity.  p. 251.

8.  BILLS AND NOTES.—*Fraud.—Notice.—Post-dated and Memorandum Checks.*—Neither a post-dated check nor a memorandum check in itself is notice of fraud in putting it in circulation sufficient to destroy the *bona fides* of a purchaser for value.  p. 252.

9.  BILLS AND NOTES.—*Checks.—Delay in Presentment.—Defenses.*—The fact that the holder has taken a check from the payee after a reasonable time for its presentment for payment has elapsed, unconnected with other suspicious circumstances, though rendering the holder subject to the risk of failure of the bank, does not otherwise subject him to equitable defenses in an action against the drawer.  p. 252.

10.  BILLS AND NOTES.—*Assignment of Check.—Consideration.*—Where the indorsee of a check executed his note for the check, the allegations of the complaint, in an action by such indorsee against the drawer of the check, that said indorsee subsequently paid the note, sufficiently makes it appear that he paid the consideration for the assignment.  p. 253.

11.  BILLS AND NOTES.—*Assignment of Check.—Consideration.—Antecedent Debt.*—A check, as well as any other negotiable instrument, may be transferred in payment of an antecedent debt.  p. 253.

12.  BILLS AND NOTES.—*Indorsement of Check.—Knowledge by Indorsee that Indorsement is Made on Behalf of Drawer.—Defenses.*—Where the indorsee of a check understood at the time that the indorsement was made by the indorser in behalf of the drawer as evidence of a loan by the indorsee to the drawer, he is not entitled to the protection of a *bona fide* indorsee, but is subject to all defenses open to a drawer or maker against the payee.  p. 253.

13. BILLS AND NOTES.—*Assignment of Check.*—*Duty of Inquiry.*— Where a check was presented to an indorsee by a person representing himself to be the agent of the drawer, the willingness of such agent to accept a release of his own debt for a part of the amount of the check was sufficient to charge the indorsee with the duty of inquiring as to the authority of such agent. p. 254.

14. BILLS AND NOTES.—*Suing as Indorsee.*—*Evidence.*—*Insufficiency.*—One who sues as an indorsee of a check cannot recover on evidence showing him to be the payee. p. 255.

From Howard Superior Court; *P. H. Elliott,* Judge.

Action by William H. Harrison against William G. Johnson and others. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*B. F. Harness, B. C. Moon,* and *W. C. Voorhis,* for appellants.

*James L. Overson, Arthur G. Manning, James F. Morrison,* and *Joseph C. Herron,* for appellee.

Cox, J.—This is an action brought by appellee against appellants, as partners doing business under the firm name of the Kokomo Trunk Company. The complaint is based on two checks, one of which was given in renewal of the other. It was answered by five paragraphs, one of which was the general denial.

Appellants, in this appeal, claim that the judgment against them resulted from alleged errors of the trial court in sustaining appellee's demurrer to their fifth paragraph of answer, and in overruling their motion for a new trial.

The fifth paragraph of appellee's complaint makes the following allegations: "That defendants were, on or about the 10th or 12th day of January, 1907, and still are, doing business as partners in the city of Kokomo, under the name of the Kokomo Trunk Company. That on or about said 10th or 12th day of January, 1907, the defendants by their check, a copy of which this plaintiff is unable at this time to file and make a part of this paragraph, for reasons here-

inafter set out, requested the Howard National Bank, of Kokomo, Indiana, to pay W. B. Hendricks or order $200, and delivered the same to W. B. Hendricks. That on the 16th day of January, plaintiff, William H. Harrison, for a good and valuable consideration, purchased and obtained said check from said Hendricks, and said check was properly indorsed to plaintiff and that said check was purchased and received by the plaintiff in good faith before the same had been presented to the Howard National Bank or any other bank for payment, and before the maturity of said check. That said plaintiff obtained said check for a valuable consideration, in due course of business and without any knowledge or notice of any defense or equities on the part of the makers at the time said valuable consideration was paid by plaintiff, and gave possession of same to him. That on several occasions previous to said 16th day of January, 1907, plaintiff had cashed for said W. B. Hendricks checks in various amounts drawn on the Howard National Bank, of Kokomo, Indiana. The exact amount or face of these checks are to this plaintiff at this time unknown, also the dates of their issue. That they were regularly signed by the said Kokomo Trunk Company, per Almira Reed. That at the time said checks were indorsed to plaintiff and a valuable consideration paid for them, plaintiff was requested by said W. B. Hendricks at the instance of said Kokomo Trunk Company to defer cashing the same at the Howard National Bank until a period of time had elapsed after receiving same (the exact length of time is to this plaintiff unknown at this time). That plaintiff was notified at the time of receiving said checks and at the time of the request to delay before the presentment of same to said Howard National Bank that said Kokomo Trunk Company had no money in said bank belonging to said Kokomo Trunk Company, but would have at the time indicated by said Hendricks, when said checks were to be presented at the various times chosen, and payments were promptly made by said bank. That afterwards,

to wit, on the 10th or 12th day of January, 1907, said W. B. Hendricks personally appeared before plaintiff, and requested that he buy a check drawn on the Howard National Bank for the sum of $200 payable to W. B. Hendricks or order, and regularly signed by said Kokomo Trunk Company, per Almira Reed, with a request of said Kokomo Trunk Company, through its lawfully authorized agent W. B. Hendricks, that the said check be not presented to said bank for a period of sixty days, as said Kokomo Trunk Company had no funds in said bank at that time but would have at the time stipulated. That defendant gave for said check, his personal promissory note, at the Citizens National Bank, Kokomo, Indiana, due sixty days after date in the sum of $150. Further that on the — day of ———, 1907, plaintiff paid off said note $150 in amount to said Citizens National Bank. Plaintiff further released and as additional consideration of having said check assigned to him, a claim and account he then held against said Hendricks for medical services rendered said Hendricks, in amount to wit: $50. That all of said acts were done in the city of Kokomo, where said check was issued. That said plaintiff on or about the 10th day of March, 1907, indorsed and presented said check to said bank, and demanded payment, which was refused. That on many occasions after the 10th day of March, said check was presented to said bank and to defendants, and payment demanded, and plaintiff at all times was met with a refusal from said parties. That on or about the 6th day of August, 1907, a new check, a copy of which is filed herewith, marked exhibit 'A', and made a part of this complaint was made out by defendants and substituted for the check heretofore described (check drawn on or about the 12th to 16th day of January, 1907). That said check drawn on or about said date was destroyed when exhibit 'A' was received in its place. That plaintiff on or about said 6th day of August, 1907, accepted and obtained possession of said check from defendants, marked exhibit 'A' in this paragraph, presented

at once the same to the Howard National Bank, of Kokomo, Indiana, and also to defendants, and demanded payment, which was refused. That said check marked exhibit 'A' is now due and unpaid. Wherefore plaintiff demands judgment in the sum of $200 together with interest to date and all other just and proper relief.''

Copy of check.

"EXHIBIT 'A'

Kokomo, Ind. Aug. 6, 1907.

HOWARD NATIONAL BANK
OF KOKOMO, IND.

Pay to W. B. Hendricks or order................$200
Two Hundred........................00/100 Dollars

Kokomo Trunk Co.,
Per. Almira Reed.

[Indorsed on back]
    W. B. Hendricks.''

The fifth paragraph of answer contained the following allegations: ''For answer to all the paragraphs of complaint based upon the check dated August 6, 1907, the defendants say: The check sued upon in this action was executed under the following circumstances and conditions, to wit: on the 10th day of January, 1907, the defendants Johnson and Cain were, and still are, partners doing business in the city of Kokomo under the name of the Kokomo Trunk Company, and on said day said Johnson and Cain and William B. Hendricks, the payee of the check in suit, executed to the Kokomo National Bank of the city of Kokomo their promissory note, dated January 10th, 1907, for the sum of $200, due in ninety days after date; that said note was executed for the purpose of borrowing money to pay a partnership debt of said Johnson and Cain, as the Kokomo Trunk Company, and the proceeds of said note, to wit: $196, was used in the payment of a debt then and theretofore owing by said Kokomo Trunk Company, to the Boston Artificial Leather Company; that William B. Hendricks

signed said note upon the first line, and was in form the principal in said note, but was in fact surety thereon for the reason that the whole of the proceeds of said note were used in the payment of said debt of said Kokomo Trunk Company; that on or about the 10th or 12th day of January, 1907, the said William B. Hendricks procured the defendants Johnson and Cain, as the Kokomo Trunk Company, through Almira Reed, their bookkeeper, in the name of the Kokomo Trunk Company, to execute to William B. Hendricks, at said city of Kokomo, a check dated on or about the 10th or 12th day of January, 1907, for the sum of $200; that he represented to defendants that it was proper and necessary for said check to be issued to him to indemnify him against the payment of the note for $200, which he had so executed to said Kokomo National Bank, with said Johnson and Cain as aforesaid; that said William B. Hendricks represented to said defendants, and agreed with them, that said check was not to be paid and would not be cashed or used by said Hendricks in any way until the maturity of said note to the Kokomo National Bank, and would then be cashed and used by him only in the event that he (the said Hendricks) should be compelled to pay said note for $200 to the Kokomo National Bank. That said Almira Reed, as the bookkeeper of the defendants, in the name of the Kokomo Trunk Company, executed to said William B. Hendricks said check under said circumstances, and under said representations and said promises and for no other or different consideration than for the purpose of indemnifying said Hendricks against the payment of the $200 note to said Kokomo National Bank. That said defendants Johnson and Cain have paid said note, as they were in duty bound to do, to the Kokomo National Bank and said William B. Hendricks had not paid any part thereof and has been fully relieved from such payment of said note by the defendants Johnson and Cain. That said William B. Hendricks on or about the 16th day of January, 1907, and four

days or more after the date of said check sold said check to the plaintiff, William Harrison, at said city of Kokomo where said check was issued, and said plaintiff William Harrison at the time he so purchased the same knew that said check was four days old and knew that there was no money in the bank at the time to pay the same but that he purchased said check at a large discount, with full knowledge that the same was not issued and in circulation in the ordinary course of business. That the plaintiff, William Harrison, held said check, issued as aforesaid and indorsed to him as aforesaid, until on or about the 6th day of August, 1907, when he surrendered said check to said William B. Hendricks and received from said Hendricks in lieu thereof the check in suit in this action, which was executed and delivered to the plaintiff as a renewal of said check of January 10th or 12th, 1907, and without any new or other additional consideration whatever, except the surrender to William B. Hendricks of the said first check issued in January, 1907. Wherefore the defendants say that plaintiff is not entitled to recover in this action.''

The contention that the court erred in sustaining the demurrer to the fifth paragraph of answer is involved with objections to the unusual character of the allegations of the fifth paragraph of the complaint, and the question presented is whether the answer was good as to it.

It is true, as contended by counsel for appellants, that it is not commendable pleading for a plaintiff, in his complaint as the indorsee and holder of a check or other 1. negotiable instrument, to recover on it against the drawer or maker, to anticipate and avoid a defense of fraud between the drawer or maker and the payee. The formal and proper practice in such case is for the plaintiff to state his cause of action on the instrument. If to the complaint the defendant sets up by answer fraud which would be a defense between him and the payee, the plaintiff may then reply the facts constituting him a *bona fide* purchaser,

and thereby avoid the answer. *Uhl* v. *Harvey* (1881), 78 Ind. 26, 30; *First Nat. Bank* v. *Ruhl* (1890), 122 Ind. 279, 23 N. E. 766; *Shirk* v. *Neible* (1901), 156 Ind. 66, 72, 59 N. E. 281, 83 Am. St. 150; *Ray* v. *Baker* (1905), 165 Ind. 74, 90, 74 N. E. 619; *Zink* v. *Dick* (1891), 1 Ind. App. 269, 27 N. E. 622.

And where a plaintiff states in his complaint, together with facts constituting a cause of action, other material and relevant facts which are a defense to the cause of

2. action, and does not allege facts avoiding such defense, his complaint will not withstand a demurrer. *Behrley* v. *Behrley* (1884), 93 Ind. 255; *Knopf* v. *Morel* (1887), 111 Ind. 570, 13 N. E. 51; *Latta* v. *Miller* (1887), 109 Ind. 302, 10 N. E. 100; *Western Union Tel. Co.* v. *Yopst* (1889), 118 Ind. 248, 20 N. E. 222, 3 L. R. A. 224; *Morgan* v. *Lake Shore, etc., R. Co.* (1891), 130 Ind. 101, 28 N. E. 548; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; *Karr* v. *Board, etc.* (1908), 170 Ind. 571, 85 N. E. 1; *Jessup* v. *Jessup* (1893), 7 Ind. App. 573, 34 N. E. 1017; *Town of Andrews* v. *Sellers* (1894), 11 Ind. App. 301, 38 N. E. 1101.

But the mere fact that a complaint, otherwise good, sets up also a defense to the cause of action pleaded, does not make the pleading bad, where matter avoiding the defense is also pleaded. *Latta* v. *Miller, supra; Bowlus* v. *Phenix Ins. Co., supra; Chicago, etc., R. Co.* v. *West* (1871), 37 Ind. 211; *Hunt* v. *State, ex rel.* (1884), 93 Ind. 311, 316; *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948; *Bunting* v. *Mick* (1892), 5 Ind. App. 289, 31 N. E. 378, 1055; *Bradley, Holton & Co.* v. *Whicker* (1899), 23 Ind. App. 380, 55 N. E. 490.

It has also been decided that it is not anticipating a defense and that it is not improper to allege facts not ordinarily necessary, but which, in the particular instance,

3. strengthen the plaintiff's case, or bring it within an exception to a general rule, or merely incidentally

disclose a possible defense. *Hunt* v. *State, ex rel., supra; Lake Erie, etc., R. Co.* v. *Holland, supra; Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328, 354, 83 N. E. 52, 84 N. E. 540.

That the indorsee and holder suing on a check or other negotiable instrument, obtained or put into circulation fraudulently, has the burden of proving that he became a holder before maturity, without notice of the fraud, and for a valuable consideration, is firmly settled. *Giberson* v. *Jolley* (1889), 120 Ind. 301, 22 N. E. 306; *First Nat. Bank* v. *Ruhl, supra; Shirk* v. *Neible, supra; Ray* v. *Baker, supra.*

We know of no reason or rule of pleading which would prevent a plaintiff in such case assuming such burden in the first instance by making proper allegations in his complaint of facts showing him to be a *bona fide* holder. It could deprive the defendant of no right that would otherwise be his, and the practice has been recognized and permitted. *Bunting* v. *Mick, supra; Bradley, Holton & Co.* v. *Whicker, supra; Kimble* v. *Christie* (1876), 55 Ind. 140; *Cooper* v. *Merchants, etc., Bank* (1900), 25 Ind. App. 341, 57 N. E. 569.

The question then arises, whether the facts alleged in the fifth paragraph of the complaint, for the purpose of showing that appellee was a *bona fide* holder, were sufficient for that purpose, and therefore sufficient to avoid the defense of fraud pleaded in the fifth paragraph of answer; or whether, if these facts had not been first pleaded in the complaint, but had been pleaded as a reply to the answer of fraud, they would have been sufficient as such.

The charge of fraud injected into the issue by the fifth paragraph of answer, as will be seen by a look at its allegations, is that Hendricks fraudulently put into circulation, by indorsement to appellee, a check which appellants' firm had drawn in his favor to indemnify him as a surety on their note, which note was afterwards paid by them; that he

had sold and indorsed the check to appellee four days after it was drawn and delivered to him, in violation of his collateral agreement with appellants not to cash or use it until the maturity of the note, and then only in the event that he should be compelled to pay the note. The allegations relating to this fraud are supplemented by others, that appellee took it knowing it was four days old, that there was no money to appellants' credit at the time with which to pay it, and that the second check was merely executed and delivered to appellee as a renewal of the first, without new consideration therefor, except the surrender of the first.

5. That negotiable paper was diverted from the purpose for which it was drawn, made, accepted or indorsed, or that the person intrusted with it for a specific purpose misapplied or misappropriated it, or its proceeds, in fraud of the maker or indorser, is not available as a defense in an action upon the instrument by a *bona fide* holder for value without notice. *Stoner* v. *Brown* (1862), 18 Ind. 464; *Wells* v. *Sutton* (1882), 85 Ind. 70; *Galvin* v. *Syfers* (1899), 22 Ind. App. 43, 52 N. E. 96; 8 Cyc. 44; Joyce, Def. to Com. Paper §380 *et seq.*

6. The holder of a negotiable instrument is not bound by a private agreement between the maker and indorser, unless he had notice of the agreement and took the bill subject to the condition. Hence, it is no defense against an innocent holder that by such an agreement the maker was not to be held liable on the instrument except upon a condition or contingency. *Deardorff* v. *Foresman* (1865), 24 Ind. 481; *Whitcomb* v. *Miller* (1883), 90 Ind. 384; *Galvin* v. *Syfers, supra;* 8 Cyc 56, 57.

This is in accordance with the well-settled rule of law, that when two innocent persons are harmed by the act of another, that one of the two must bear the loss who has put it into the power of the wrongdoer to harm the other. So if appellee was a *bona fide* purchaser, appellants, according to the allegations of these pleadings, having drawn the check

to Hendricks, as the payee, and put him in possession of it, must suffer the loss, and not appellee.

It is, however, insisted that appellee is not an innocent holder, for the reason that as he knew there was no money in the bank to meet the check at the time he took it,

7. knowledge is to be imputed to him that there was such irregularity about it as to destroy the *bona fides* of his purchase. The position is not tenable. We are not unaware of the fact that checks are not infrequently drawn and delivered to the payee, not to be immediately presented for payment, when the drawer has no funds, but intends to have at the time the check is to be presented.

It is true, as stated by counsel in their brief, that the issuance of a check implies, ordinarily, that there is money in the hands of the drawee belonging to the drawer to pay it; and that it is a fraud to put a check into circulation when there is not money to pay it. But this, obviously, is not a fraud on the drawer, but on the payee or one to whom it is indorsed, who has no knowledge of the lack of funds. Where such knowledge is imparted to the payee, and by him to the indorsee and the check nevertheless is taken, to be presented at the time when it is represented that funds will be available, there can be no fraud involved. The taking of the check under such circumstances imparts notice that it cannot be cashed at once, but it is not calculated to carry notice of any fraudulent infirmity in the contract. *Matlock* v. *Scheuerman* (1908), 51 Or. 49, 93 Pac. 823, 17 L. R. A. (N. S.) 747. And this is particularly true where, as alleged in the complaint in this case, the drawers had, at the hands of Hendricks, previously procured appellee to cash similar checks drawn by them when they were out of funds, with a similar request that they be not presented until a time designated, when appellants would have the money to meet them, which checks were afterwards paid as agreed.

We cannot see that the transaction carries a more distinct warning of fraud to a possible purchaser than would

a post-dated check; or a memorandum check which is,
8. between the drawer and payee, an evidence of indebtedness and may carry an agreement between them that it shall not be presented for payment at the bank on which it is drawn. Neither a post-dated check nor a memorandum check in itself is notice of fraud in putting it in circulation sufficient to destroy the *bona fides* of a purchaser for value. *Symonds* v. *Riley* (1905), 188 Mass. 470, 74 N. E. 926; *Dykers* v. *Leather Mfrs. Bank* (1845), 11 Paige Ch. 612; 1 Morse, Banks and Banking (4th ed.) §§388, 389; 2 Daniel, Negotiable Inst. (4th ed.) §§1578, 1583; 7 Cyc 954.

Nor can the contention of appellants be sustained, that the check, having been taken by appellee four days after its date, was overdue and stale, and was, therefore,
9. subject to defenses which might exist between the original parties. Such is not the law. It is true that where one takes a check from the payee after a reasonable time for demanding payment from the drawee has elapsed, and during the delay loss occurs to the drawer by the failure of the bank, he may defend against the holder. The holder of a check who gets it after a reasonable time has passed for demanding payment takes it with the risk of the failure of the bank so far as the drawer is concerned. But it is no defense that the check was not presented at once, or in a reasonable time, where no contingency, such as the failure of the bank, has intervened and caused loss to the drawer by the delay. 2 Morse, Banks and Banking (4th ed.) §421; 2 Daniel, Negotiable Inst. (5th ed.) §1586 *et seq.;* Van Schaack, Bank Checks, chap. 4 pp. 32-57.

But aside from this, the rule is, that the fact that the holder has taken a check from the payee four days or even more after its date, unconnected with other suspicious circumstances, does not subject him to equitable defenses in an action by him against the drawer. 2 Daniel, Negotiable Inst. (5th ed.) §1634; 2 Morse, Banks and Banking (4th

ed.) §442; Tiedeman, Com. Paper §446; *Estes* v. *Lovering Shoe Co.* (1894), 59 Minn. 504, 61 N. W. 674, 50 Am. St. 423; *Fealey* v. *Bull* (1900), 163 N. Y. 397, 57 N. E. 631; *Citizens State Bank* v. *Cowles* (1903), 89 App. Div. 281, 86 N. Y. Supp. 38; *Ames* v. *Meriam* (1867), 98 Mass. 294; *First Nat. Bank* v. *Harris* (1871), 108 Mass. 514; *In re Brown* (1843), 2 Story 502, Fed. Cas. No. 1,985; *Bull* v. *Bank of Kasson* (1887), 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97 *Matlock* v. *Scheuerman, supra.*

Again it is contended that it does not appear from the complaint that appellee was a *bona fide* indorsee, in that it is not alleged that the note he gave in exchange for the check was payable to order or bearer at a bank in this State, so as to make it negotiable under our statute as an inland bill of exchange, and that, therefore, no payment of the consideration for the assignment of the check was shown. It is, however, alleged that appellee subsequently, at the bank at which it was given, paid the note, and this sufficiently makes it appear that he paid the consideration for the assignment. It also appears that, as additional consideration, he released a debt he held against the payee, and a check, as well as any other negotiable instrument, may be transferred in payment of an antecedent debt. 1 Daniel, Negotiable Inst. (5th ed.) §§184, 780; *Walker* v. *Geisse* (1839), 4 Whart. *252, 33 Am. Dec. 60 note. See, also, note to *Matlock* v. *Scheuerman* (1908), 17 L. R. A. (N. S.) 747.

The court did not err in sustaining the demurrer to the fifth paragraph of answer to the fifth paragaph of complaint. As to its sufficiency as an answer to the other paragraphs of complaint on which appellee had judgment, we express no opinion, as the question is not presented.

By the fifth paragraph of the complaint, and the other paragraphs on which appellee had his verdict and judgment, he sued as a *bona fide* indorsee of the check for value. The court gave a series of instructions ap-

plicable to this theory. It is contended that the evidence does not sustain the verdict on the issue presented. It appears from the testimony of appellee and Hendricks, that the latter presented the check to appellee, not as his own to be sold for his own benefit, but, as Hendricks claimed, in behalf of appellants, to secure a loan of money for sixty days to use in their business; that appellee understood that he was making a loan to appellants, and that he was taking the check as the evidence of it. This evidence fixes his relation to the check, and it is not that of an indorsee. He became the first holder, in effect the payee, and manifestly cannot protect himself with the shield of a *bona fide* indorsee, but must meet such defenses as may be open to a drawer or maker against a payee. As the owner of the check, Hendricks could have sold it to appellee for cash, could have exchanged it for anything else he pleased, of whatever value, or could have paid with it an antecedent debt he owed appellee, and appellee would become a *bona fide* holder for value. On the other hand, if he took it to appellee merely as the agent of appellants, as the evidence of a loan which he was to secure for appellants from appellee, he could not use it or any part of the proceeds for his own profit in paying his debt to appellee and make appellants liable to appellee therefor, for appellee would take it as payee, direct from appellants. *Stainback* v. *Bank of Virginia* (1854), 11 Gratt. 269; *Dowden* v. *Cryder* (1893), 55 N. J. L. 329, 26 Atl. 941; *Merchants, etc., Bank* v. *Ohio Valley, etc., Co.* (1905), 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312; *Stainer* v. *Tysen* (1842), 3 Hill. 279.

But the reason for allowing defenses in such case is that there is privity of contract, and it may be said that there was not actual privity between appellee and appellants so as to give him knowledge of the fraud involved. It may justly be answered that the circumstances were such as to charge him with constructive notice of it—to require him to inquire into the transaction. That

Hendricks was so anxious to raise money on the check for the appellants that he was willing to take a release and discharge of his own debt to appellee in a sum equal to one-fourth of the amount of the check, without apparent authority from the drawers, was sufficient to require him to ascertain from them the facts. Their place of business was in the same city where he could have readily reached them. If the agency of Hendricks existed, it was only to raise money on the check for his principals. It carried no implication of authority to deal with the check for his own profit; and the rule is that if the agency of the party is made to appear, the principal will not be bound beyond the authority given. And where, as in this case, the party dealt with has notice that the other party is acting as agent in the transaction, he is bound to inquire into his authority. 1 Randolph, Com. Paper §388. Having sued as an indorsee 14. of the check, appellee cannot recover on evidence showing him to be the payee. *Bixel* v. *Bixel* (1886), 107 Ind. 534, 8 N. E. 614; *Smelser* v. *Fort Wayne, etc., Turnpike Co.* (1882), 82 Ind. 417.

Questions are raised on instructions given and refused and on rulings on evidence which may not arise again, and they are not, therefore, considered.

Judgment reversed, with instructions to grant appellants a new trial.

NOTE.—Reported in 97 N. E. 930. See, also, under (1) 31 Cyc. 109; (2) 31 Cyc. 110; (3) 31 Cyc. 109; (4) 8 Cyc. 233; (6) 17 Am. St. 807; (7) 7 Cyc. 924; 39 L. R. A. (N. S.) 1207; (9) 7 Cyc. 952; (10) 8 Cyc. 114; (11) 7 Cyc. 696; (12) 7 Cyc. 956; (13) 7 Cyc. 941; (14) 8 Cyc. 209. For a discussion of the sufficiency of the complaint in an action on a bank check, see Ann. Cas. 1912 A. 184.